THOMPSON, J.
 

 The defendant was tried for murder, found guilty as charged, and sentenced accordingly.
 

 The victim of the crime was his stepdaughter. She was asleep in bed with her mother when the fatal blow was struck. The instrument used was a common axe wielded by a wooden handle.
 

 The lifeless body of the girl was carried into an adjacent room, where an act abhorrent and unthinkable was committed by defendant-.
 

 The indictment was returned against the defendant on September 30, 1926, and counsel were appointed to represent him on October 8th. The case was set down for trial for October 25th, but for some reason went over until November 30th.
 

 . On the day of trial the counsel for defendant filed a motion for continuance in which it was alleged that the defense of insanity would he urged and that it was necessary to
 
 *515
 
 obtain evidence from the German navy officials; that said information when obtained will show thht the defendant was discharged from the German navy about the year 1910 on account of insanity; that evidence of said fact cannot be obtained from any other source, as the original discharge had been lost or destroyed.
 

 The motion for continuance was denied, and this forms the subject of the first bill of exceptions.
 

 The defendant was tried on a general plea of not guilty. There was no special defense made in the trial before the jury that the defendant was suffering from insanity at the time the homicide was committed. Nor was any plea of present insanity submitted to the trial judge either before or during the trial of the case.
 

 The fact, if it were a fact, that the defendant was discharged from the German navy in 1910 on account of insanity, would not be proof even remotely of either present insanity or insanity at the time the crime was committed, unless that fact was followed up by evidence tending to show present insanity or insanity at the time the crime was' committed.
 

 The denial of the continuance, even if error, was harmless, and did not prejudice the accused in any manner.
 

 Bill No. 2. A witness Brown was asked:
 

 “Q. What, if anything, did he state that he did to the girl immediately after he struck the blow ?
 

 “A. He said he carried her and put her on a bed in an adjoining room and had intercourse with her.”
 

 The objection was made that the testimony was inadmissible for the, reason that defendant was on trial for murder and proof of any ether crime could not be made.
 

 The testimony was a part of the res gestae. The act of intercourse was committed immediately after the killing, and was so closely connected and linked therewith as to form a component part of the principal fact or transaction, to wit, that of killing.
 

 The general rule is that all that occurs at the time and place immediately before and after a difficulty is admissible as res gestse.
 

 It is a mistake to say that the evidence tended to prove a crime separate and distinct from that with which defendant was charged. Sexual intercourse with the dead body of a human being, however shocking it may be, has not been made a crime.
 

 What has been said with reference to the preceding bill applies to bill No. 3. •
 

 Bill No. 4 was reserved to the proof of a confession made by the defendant to the witness Davis Brown; the objection being that the confession was not shown to be free and voluntary.
 

 The trial judge states that the testimony proved beyond any doubt that the. statement was free and voluntary, and this is verified .by the evidence in the record.
 

 Indeed, it appears that the defendant was prone to talle freely about the killing to any one who approached him and asked him about the killing.
 

 The fifth and last bill was reserved to the overruling of a motion for a new trial.
 

 The motion, in addition to the errors com: plained of which have already been consid-. eréd, alleges that newly discovered evidence has come to the knowledge of the defendant which wa,s not known at the,time of the trial.
 

 The newly discovered evidence consists of a letter from two physicians, Drs. John N. Thomas and T. O'. Cooper, in which it is stated that the writers are of the opinion that the defendant was mentally unsound when he committed the act for which he was convicted..
 

 It appears that about October 1,5th (the trial was had on November 30th of the same year), Drs. Thomas and Cooper were employed by the attorneys of defendant ,to ob-. serve the defendant, who was at .that time in
 
 *517
 
 the jail at Alexandria. One of these doctors (Cooper) several days before the trial advised one of defendant’s attorneys that he and Dr. Thomas could not say that the defendant was crazy at .the time the crime was committed or at the present time. The judge offered to send for the two doctors if the attorneys wanted them to testify in the ease, but the attorneys did not request their presence, as they, the attorneys, had been informed by Dr. Cooper that neither he nor Dr. Thomas could testify that the defendant was insane. The question as to the insanity of the accused passed out of the case, and as before stated was never thereafter raised, either by application to the court for a lunacy commission or on the trial of the case.
 

 The evidence made the basis for a new trial cannot therefore be properly said to be newly discovered evidence. Hence, the trial judge acted within his sound discretion in 'denying a new trial.
 

 The accused and his counsel were afforded every opportunity and facility to urge the defense of insanity and to obtain testimony to establish that defense, but, being satisfied, after proper attempts to get evidence to prove the mental condition of defendant, that such a defense could not be sustained, advisedly abandoned the question of insanity altogether and went to trial without making any such defense.
 

 . It is too late after conviction to urge as a ground for a new trial the proffered unsworn opinion of physicians to the effect that in their judgment the defendant was insane at the time he committed the crime, where as a matter of fact the said physicians had been employed to observe the defendant and were unwilling after such observance and examination to swear that the accused was insane.
 

 It has been held by this court that even where the question of sanity is submitted to the jury as affecting the question of innocence or guilt, and no contention is made that defendant is or was insane at the trial, or has become so since, the matter is foreclosed by verdict of the jury and ruling of judge on motion for new trial. State v. Brodes, 156 La. 430, 100 So. 610.
 

 If the defendant is presently insane, the sentence cannot be carried into execution.
 

 The defendant has his remedy by appropriate proceeding to try out that issue. See State v. Brodes, 156 La. 428, 100 So. 610, and 157 La. 162, 102 So. 190.
 

 We can discover no sufficient reason for granting a new trial.
 

 The conviction and sentence are affirmed.