FOURNET, Justice.
 

 This is an appeal by Clifton Guillory from his conviction and sentence to death on an indictment charging him with the murder of Eugene Guidry.
 

 It appears that Guillory, who was a trusty in the county jail at Beaumont, Texas, where he was serving a sentence for cutting a boy with a knife, illegally absented himself from that jail on the afternoon of January 14, 1942, just a few hours prior to the commission of the crime in the instant case, and, thumbing his way to Lake Charles, there sought out Alice Brown, the woman with whom he had lived out of wedlock prior to his incarceration in the Texas jail. After ordering her to get out of bed and to accompany him, he turned and stabbed to death Eugene Guidry, the man with whom Alice Brown was then living, using as his weapon a knife he had, prior to his arrest in Texas, secreted about his person. The defendant then intercepted Anthony Williams, another negro man who was running away from the house, stabbing him in the back and again when he turned around to defend himself. From there the defendant proceeded to the house where he had first made inquiries relative to the whereabouts of Alice Brown and demanded coal oil, with which he cleaned the blood from his hands andl clothes, later going to the home of his family near Sulphur, Louisiana, to which place he was tracked the next day and shot in the leg by one of the officers when he attempted to escape. The record further shows that Alice Brown, who had run from the house and hidden in a neighbor’s home during the stabbings, returned to her home, where she found that the defendant had, during his. stay there, turned over the mattress on the bed, thrown the radio in the weeds near the house after he removed the batteries therefrom) and torn the wires from the engine of the automobile owned by the man he had just stabbed to death to delay pursuit.
 

 On January 16, 1942, the grand jury met and returned two indictments against the defendant, one for the murder of Eugene Guidry and the other for the cutting of Anthony Williams' with a dangerous weapon with intent to murder. When he was arraigned on the former indictment, he pleaded not guilty. Subsequently, upon the application of his mother and father, he was-examined by a lunacy commission, which commission found that he was not only sane at the time he was examined, but that he had also been sane at the time he committed the crime. Having been duly tried and convicted, he was sentenced to death.
 

 The defendant in this appeal is relying for the reversal of his conviction and sentence on several alleged errors in the rulings of the trial judge, to which timely objections were made and bills of exceptions reserved. The first bill is levelled at that portion of the district attorney’s opening statement referring to the defendant’s un
 
 *57
 
 authorized leave from the Beaumont jail, where he had been incarcerated on a charge of cutting with intent to kill, while the second was reserved to the trial judge’s ruling permitting the jailer of the Beaumont jail to substantiate these facts when he was on the witness stand. The third was reserved to the trial judge’s ruling allowing the witness Alice Brown to testify with reference to the condition in which she found her home after the commission of the crime. Bills of Exceptions Nos. 4, 5, and 6, were reserved when the defendant, under cross-examination, was questioned about former convictions and charges against him, the fourth with reference to the charge under which he had been incarcerated in the Beaumont jail, the fifth with reference to the charge of cutting Anthony Williams with intent to kill him, and the sixth with reference to a charge of raising a check.
 

 The defendant is contending that all of the evidence admitted over his objection with reference to offenses other than the one on which he was being tried, was inadmissible, including the portion of the district attorney’s opening statement with reference to his escape from the county jail in Beaumont while he was serving a sentence there, and that such evidence had the effect of prejudicing the jury against him. It is also his contention that the testimony of Alice Brown was not admissible because it was not shown that he was responsible for the condition in which she found her home.
 

 Although as a general rule evidence of the commission of another crime other than that charged is not admissible, as stated by Marr in his work on the criminal jurisprudence of this state, “When the scienter or quo animo forms an essential or indispensable part of the inquiry, testimony may be offered of such acts, conduct or declarations of accused as tend to establish such knowledge or intent, notwithstanding they may, in law, constitute a distinct offense. That is to say, to the general rule-that no evidence can be given of felonies, committed by accused other than that charged in the indictment there are exceptions. Thus, proof of a different crime from the one charged is admissible when both offenses are closely linked and constitute a part of the res gestae, or when it is-pertinent and necessary to show motive or intent * * Vol. 2, Marr’s Criminal-Jurisprudence of Louisiana, 2d Ed., 868, Section 565. See, also, State v. Mulholland, 16 La.Ann. 376; State v. Deschamps, 42 La.Ann. 567, 7 So. 703, 21 Am.St.Rep. 392; State v. Anderson, 120 La. 331, 45 So. 267; State v. Blount, 124 La. 202, 50 So. 12; State v. Ard, 160 La. 906, 107 So. 617; State v. Cole, 161 La. 827, 109 So. 505; State v. Norphlis, 165 La. 893, 116 So. 374; State v. Jones, 174 La. 1074, 142 So. 693; State v. Bryan, 175 La. 422, 143 So. 362; State v. Mitchell, 181 La. 135, 158 So. 820; State v. Cupit, 189 La. 509, 179 So. 837; State v. Rives, 193 La. 186, 190 So. 374. And under the express provisions of the Code of' Criminal Procedure “ * * * a witness,
 
 whether he be the defendant or
 
 not, may be compelled to answer on cross-examination whether or not he has ever been indicted or arrested and how many times.”’ Article 495. (Italics ours.)
 

 
 *59
 
 As was pointed out by the trial judge in his per curiam to Bill of Exceptions No. 1, the remark in the opening statement of the district attorney that he proposed to introduce evidence to show that the defendant had illegally left the county jail in Beaumont, where he was serving a sentence, just a few hours.prior to the commission of the murder, when considered with the remainder of the opening statement “was relevant to show that the murder was premeditated and that he had malice aforethought, and further than this, his leaving the jail illegally and immediately thumbing his way to Lake Charles and inquiring as to where the negro woman lived and then proceeding to the house, where the murder was committed immediately upon his reaching the house * * * is so closely connected with the commission of the crime itself that it forms a párt of the res gestae.” It necessarily follows that the testimony of the Beaumont jailer in corroboration of these facts was admissible.
 

 Likewise the testimony of Alice Brown showing the condition in which she found her home immediately after the murder was admissible as being one of the acts of the defendant in connection with the crime that formed a part of the res gestae. As pointed out by the trial judge in his per curiam to this third bill, both Alice Brown and Anthony Williams ran to a neighboring house immediately after the killing and it was only a few minutes after this that Alice Brown returned to her home. State v. Schmidt, 163 La. 512, 112 So. 400; State v. Fisher, 168 La. 584, 122 So. 858; and 20 Am. Jur. 558, § 667.
 

 The district judge properly allowed the district attorney to question the defendant on cross-examination with respect to prior indictments or arrests, for, once the accused had taken the witness stand in his own behalf, his credibility as a witness was open to attack the same as any other witness and he thereby subjected himself under cross-examination to reveal his entire record. The authorities on this point are legion in our jurisprudence. State v. Alexis, 45 La.Ann. 973, 13 So. 394; State v. Southern, 48 La.Ann. 628, 19 So. 668; State v. Callian, 109 La. 346, 33 So. 363; State v. McCoy, 109 La. 682, 33 So. 730; State v. Barrett, 117 La. 1086, 42 So. 513; State v. Quinn, 131 La. 490, 59 So. 913; State v. Posey, 137 La, 871, 69 So. 494; State v. Werner, 144 La. 380, 80 So. 596, 6 A.L.R. 1601; State v. Foster, 153 La. 154, 95 So. 536; State v. Toliver, 163 La. 1000, 113 So. 222; State v. Vastine, 172 La. 137, 133 So. 389; State v. Blount, 186 La. 460, 172 So. 527; State v. Thornhill, 188 La. 762, 178 So. 343; State v. Goodwin, 189 La. 443, 179 So. 591, and State v. Obey, 193 La. 1075, 192 So. 722. See, also, annotations in 6 A.L.R. 1608, 25 A.L.R. 339, and 103 A.L.R. 350.
 

 Counsel for defendant, however, has raised another issue with respect to his second bill in that he contends all of the testimony of the Beaumont jailer was not taken down by the court reporter and transcribed to be attached to this bill, as required by law. He contends that if such testimony had been taken down it would show the witness was
 
 *61
 
 permitted to testify with respect to other charges against the defendant than the one on which he was being held in the Beaumont jail.
 

 The trial judge in his per curiam to this bill stated he did not understand counsel to request that
 
 all
 
 of the testimony of the Beaumont jailer be taken down — his testimony to and including é the question objected to, as well as the objection itself and the ruling of the trial judge thereon, was all taken down. The judge’s statement in this respect is borne out by the record for it shows that defendant’s counsel, in his objection to the question asked the Beaumont jailer, requested that such objection “stand as a general objection to all testimony as to the accused being in jail in Texas or as to his illegally leaving said jail.” The record 1 is barren of any objection as to testimony of the witness with respect to any other crimes committed by the defendant. Moreover, the defense in this case being one of .self-defense and the defendant having taken the witness stand in his own behalf, he subjected his testimony to impeachment and put his credibility at issue like any other witness. State v. Hughes, 141 La. 578, 579, 75 So. 416; State v. Waldron, 128 La. 559, 54 So. 1009, 34 L.R.A.,N.S., 809; State v. Suire, 142 La. 101, 102, 76 So. 254; and State v. Werner, 144 La. 380, 80 So. 596, 6 A.L.R. 1601. He thereby subjected himself to cross-examination with respect to other charges preferred against him (State v. Goodwin, 189 La. 443, 179 So. 591, and other cases cited supra) and inasmuch as a review of the testimony reveals that the questions propounded to the defendant on cross-examination were neither unreasonable nor oppressive it does not appear that the defendant was prejudiced by such evidence.
 

 For the reasons assigned, the conviction and sentence appealed from, are affirmed.
 

 O’NIELL, C. J., dissents from the rulings on Bills 1 and 2.