FOURNET, Justice.
 

 This is an appeal by Andrew D. McFarlain from his conviction and sentence to life imprisonment on an indictment charging him with the murder of Euclide Broussard.
 

 It appears from the record that McFarlain was the common-law husband of Ella Broussard, the daughter of the deceased, and that for some four months prior to the murder they had been living with her mother and father. On the night preceding the murder (which occurred about 12:30) the deceased drove McFarlain, Ella Broussard, and a friend of theirs, Jack Miller, who lived only, a short distance from the house, to a beer parlor in a neighboring village. Returning around ten, the defendant and his paramour decided to spend the night with Miller. All three slept in the same bed. Changing his min'd some time later, McFarlain and the Broussard girl returned to their home. The deceased got up and let them in. Upon reaching the room they occupied, McFarlain began making a search of the dresser and when his paramour asked him what he was looking for, he replied he wanted his knife “to finish it tonight.” Followed by her, he then returned to the room, where the elderly couple were sleeping and asked Mrs. Broussard if she thought he and his common-law wife had come there to be their servants. She replied that she did not. However, when she attempted to rise, the defendant struck her and she fell unconscious to the floor. At this, the deceased got out of bed and made his way around it in the direction of the defendant, whom he met. Ella Broussard, getting between them, told McFarlain to go to bed. He thereupon thrust her aside and stabbed her father, severing the jugular vein. Broussard fell to the floor. Mrs. Broussard, regaining consciousness, raised her head and saw the defendant leaving the room. She then dragged herself toward her daughter, who was kneeling, crying over the body of her father, and, asking her what had happened, was told: “Mac killed daddy.” Leaving the Broussard house, the defendant, on his way back to Miller’s threw the knife with which he had done the stabbing into a canal adjacent to the nearby paved highway. When arrested, he was in bed at Miller’s. He denied having killed Broussard and showed the sheriff a small knife, stating he couldn’t cut anyone with it. He .'.(declared he had no blood on his clothes, but when taken to the sheriff’s office for questioning his attention was called to the blood on his trousers and he did not answer, although he denied the killing. In the meanwhile, approximately half an, hour after the stabbing, Voorhies Istre, the grandson-in-law of Broussard, removed a shotgun lying in a pool of blood about two
 
 *806
 
 feet from the body and, wiping off the blood, unbreached it. Finding it was unloaded, he took two shells from Mrs. Broussard, loaded the gun, and left the house. Reaching the gate he met Joe Quebodeaux, husband of Broussard’s niece, and giving the gun to him asked that he place it back in the room. The gun was again removed before the arrival of the sheriff and this time it was not discovered until some two months later.
 

 On May 7 thereafter, the grand jury returned an indictment against McFarlain for the murder of Euclide Broussard. He was found guilty without capital punishment and sentenced tó imprisonment at hard labor for the remainder of his natural life.
 

 On this appeal he is relying for the reversal of his conviction and sentence on five alleged errors in the rulings of the trial judge, to which timely objections were made and bills of exceptions reserved.
 

 To sustain his plea of justifiable homicide, committed in self-defense, the defendant testified Mrs. Broussard (a frail woman of 74 weighing between 120 and 130 pounds) attempted to strike him with a stick and that when he slapped her, Broussard, with shotgun in hand, advanced on him, threatening to kill him; that it was then he returned to his room to secure his knife, where, pursued by Broussard, he attempted to disarm him and, in the ensuing struggle, evidently inflicted the wound from which Broussard died.
 

 On the cross-examination the defendant’s counsel elicited from the witness Istre the fact that he did not inform the sheriff a. shotgun which was subsequently removed was found near the body of the. deceased. On re-direct examination the state asked Istre whether or not his intention in removing the shotgun was to suppress or hide material evidence. The first bill of exceptions was reserved to the judge’s ruling permitting the witness to answer this question.
 

 It is defendant’s contention that the intention of Istre in this respect was a question of fact to be decided by the jury.
 

 In his per curiam to this bill, the judge says:. “It was of course for the jury ultimately to interpret the motives of the witness, but it appears to be equally obvious that it was competent for the witness to testify whether or not it was his purposes to suppress or hide evidence. Besides, the evidence objected to was brought out by counsel for the accused themselves.”
 

 We find no error in the trial judge’s; ruling. Moreover, the defendant has failed to point out in what manner his cause could * have been prejudiced by this answer, andl we cannot think of any.
 

 The remaining bills of exceptions all', touch on certain portions of the testimony and examination of Mrs. Euclide Broussard..
 

 When Mrs. Broussard was permitted to testify that on the morning preceding the murder the defendant had, after shooting birds with her husband’s gun, placed it by the dresser in their room, near where it was found in the pool of blood,, the next bill was reserved.
 

 
 *808
 
 Defendant’s position is that since no testimony had been introduced relative to threats made against the deceased by the defendant, the testimony was not only immaterial and irrelevant, but was .also •inadmissible as a part of the res gestae, having occurred approximately twenty hours prior to the killing.
 

 We find from his per curiam that the trial judge’s ruling as to the admissibility of this evidence was based on the fact that the testimony of other witnesses had already revealed this gun had been picked up unloaded near .the body of the deceased. Consequently, the facts being elicited from Mrs. Broussard in this respect were circumstances to be considered by the jury, the objection going rather to the effect than to the admissibility of the evidence.
 

 We find no error in the judge’s ruling. Undoubtedly this incident occurred ,at a time too remote to form a part of the res gestae. However, under the particular facts of the case, we think it was an incident which the jury could take into consideration in determining whether the defendant, who claimed to have been attacked by the defendant with a gun, knew or should have known that the gun was, in •fact, unloaded; or the probability of it having been placed there by the defendant after his stabbing of the deceased.
 

 The defendant’s objection to Mrs. Broussard’s statement that her daughter told her, after she regained consciousness, that “Mac killed daddy,” which forms the basis of bill of exceptions No. 3, is grounded on the theory that this formed no part of the res gestae, because spoken at a time when the blow which resulted in the death of Broussard had already been struck, and was, conseqrtently, merely hearsay.
 

 We think the trial judge’s conclusion that the “assault on Mrs. Broussard and the killing of the deceased constituted one continuous transaction and the declaration of Ella Broussard, provoked by the excitement of the moment, was a part of the res gestae” is correct. See, State v. Guillory, 201 La. 52, 9 So.2d 450, the authorities therein cited; State v. Davis, 162 La. 500, 110 So. 733; Vol. 6, Wigmore on Evidence, 3d Ed., 135, 139; and 22 C.J.S., Criminal Law, § 674, p. 1065.
 

 Bill of exceptions No. 4 was reserved when the trial judge permitted the district attorney to inquire as to the condition of Mrs. Broussard’s health at the time of the killing. Defendant’s objection to this questioning is based on the ground that it was not only irrelevant, but calculated to prejudice the jury against him.
 

 Since the evidence shows Mrs. Broussard was a small, frail woman of 74 and partially paralyzed, the information sought to be elicited by this question was relevant for the jury’s consideration in determining whether the defendant was justified in believing he was in danger of receiving bodily injury at her hand when he struck her.' Furthermore, as stated by the trial judge in his per curiam to this bill, “The assault on Mrs. Broussard and the killing constituted one continuous transaction.” Con
 
 *810
 
 sequently it was admissible. State v. Guillory, supra.
 

 The objection embodied in bill of exceptions No. 5 is levelled at the ruling of the trial judge permitting Mrs. Broussard to identify as the property of the defendant the knife with which the deceased was stabbed. The defendant, testifying in his own behalf, admitted the knife was his, and his counsel concede their objection is a very technical one, being raised more as to the time when the testimony was elicited than to the testimony itself. It is their contention that when Mrs. Broussard was questioned in this respect no foundation had been laid for the identification of the knife and no evidence had been introduced to connect the defendant with the slaying of the deceased.
 

 “The Supreme Court need not inquire into the admissibility of evidence of a fact admitted by accused, for, whether such evidence has been rightly or wrongly admitted, he could have suffered no injury.” Vol. 2, Marr’s Criminal Jurisprudence of Louisiana, 909.
 

 The bill reserved when the trial judge-overruled the defendant’s motion for a new trial, which motion was based on the alleged errors just disposed of and the usual additional allegation that the verdict is contrary to the law and the evidence, presents nothing further for our consideration.
 

 For the reasons assigned, the conviction and sentence appealed from are affirmed.
 

 ODOM, J.,'absent.