[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1018 
The defendant was indicted and tried for murder. The verdict of the jury was "Guilty as Charged". There was judgment sentencing him to suffer the penalty of death and ordering that he be executed in the manner provided by law. He appealed.
There are in the record two bills of exception. The first bill reads as follows:
"Be it remembered that on the trial of this cause, Sheriff Grady Kelly, Sheriff of Rapides Parish, Louisiana, summoned as a witness for the State, being on the stand, a certain document was offered by the State and without objection, read to the jury after the proper foundation had been laid to the satisfaction of the *Page 1019 
Court and without objection of defense counsel.
"Whereupon counsel for the defendant objected to the document introduced by the District Attorney, because it was a copy of the original statement, with the names of the witnesses typewritten thereon and attested to by the main witness, Grady Kelly, as having been subscribed to before him.
"The Court thereupon over-ruled the objection as coming too late, whereupon counsel for the defense reserved a bill of exception to the ruling of the Court."
This bill shows on the face that it has no merit. It shows that the document now complained of was offered in evidence by the State without objection and was read to the jury after the proper foundation had been laid "to the satisfaction of the Court and without objection of defense counsel". If counsel for the defendant had any objection to the introduction of the document in evidence, he should have urged his objection at the time the document was offered in evidence and before it was read to the jury. The court overruled the objection on the ground that it came too late.
According to the per curiam of the trial judge — and counsel for defendant concede that his statements relating to this bill are correct —, the document offered by the district attorney purported to contain a free and voluntary statement made by the accused to the sheriff pertinent to the homicide, which statement was made by the accused immediately after his arrest in the City of Alexandria. The *Page 1020 
statement was made by the accused in the presence of the sheriff, the chief of police of Alexandria, the commanding officer of the United States Army unit to which the accused was attached, and other subordinate and peace officers. It was reduced to writing as dictated by the accused. After the foundation had been laid by State's counsel showing "that it was made by the accused freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises", the court, says the per curiam, "inquired of Counsel for the accused whether the defense desired to offer evidence to disprove or rebut the proof so tendered. Counsel for the defense informed the Court that he could not offer any contrary proof, readily conceding that the written statement was admissible in evidence and that no objection would be interposed to its admissibility. The Court thereupon ruled the written statement admissible, and it was read in its entirety to the Jury by the District Attorney".
The per curiam further shows that it was only during the cross-examination of the sheriff by defense counsel, "after the State had completed its examination of the witness in chief, that the objection to the admissibility of the written statement was urged, on the ground that said document was a copy of the original".
The judge said in his per curiam: "Furthermore, the authenticity, accuracy and verity of this written document was again fully confirmed by the testimony of the accused on direct examination by *Page 1021 
his counsel. Defense counsel presented the document to the accused on the witness-stand and he readily admitted that it contained a full and complete recital of the statement made by him to the said Sheriff and others following his arrest, and that the signature `Lionel J. Allen' at the bottom of each page was his true and genuine signature. No attempt was made by him or his counsel to question the truthfulness of the statement or any portion thereof. He very frankly admitted to his counsel and to the jury that he had voluntarily made the statement to the Army and peace officers, and that the document was a true, full and correct recital of the statement so made."
Clearly this bill has no merit.
The second bill was reserved to the ruling of the court refusing to grant the defendant a new trial. The application for the new trial was based on three grounds.
The first ground was "That due to his inability to secure counsel, counsel was assigned to him, seven (7) days before the trial, which was too short to go into all the elements of defense in order to secure a just and fair trial".
We need not discuss this point further than to say that counsel for the defendant admit in their brief that, when the case was called for trial seven days after it was fixed, they permitted the case to be taken up for trial without objection.
Counsel for the defendant say in their brief: "When the case was called for trial counsel for the defense, who had *Page 1022 
been appointed by the Court and without remuneration having done all within his limited means that he could possibly do in the preparation of the defense, admitted that he was ready and proceeded to trial."
This is borne out by the per curiam of the trial judge.
The second point urged by counsel in his motion for a new trial is that the district attorney, during the course of his argument before the jury, "attempted to impress upon the Jury the making of several confessions, and so used the word confession in his argument to the Jury, and in fact they were not confessions, but signed admissions of fact".
The trial judge in his per curiam said with reference to this point:
"The statements of the District Attorney in his argument to the Jury are in full accord and consonance with the facts presented. Both the State and Defense counsel dwelt at length on these statements, written and verbal, of the accused, interposing the same in connection with all of the other evidence, the former in an effort to establish the guilt of the accused, the latter his innocence. The court fully charged the Jury on the law of confessions and admissions, defining the meaning of both, and that they were the judges of the weight to be given the evidence heard by it. At no time during the argument by the State's attorney did the defense counsel offer any objection to that which he now considers prejudicial.
"Unquestionably the argument was confirmed [confined] exclusively to matters *Page 1023 
as to which evidence had been received and law applicable thereto."
The third and last point raised by counsel in his motion for a new trial was that defendant is a Negro, and one of the petit jurors, a white man, was the son of a man who had been killed by a Negro; that the defendant, not being a resident of this state, had no knowledge of this fact, and that his counsel had none until after the trial. Counsel now argue that the fact that the juror's father had been killed by a Negro would cause the juror to "subconsciously react unfavorably to the defendant".
Counsel's argument is based solely upon the assumption that the fact that the juror's father had been killed by a Negro would so prejudice the juror against the colored race that he could not render a fair and impartial verdict. But they say in their brief on page 5 that "the men called were all honorable citizens, good and conscientious men".
In his per curiam the trial judge said:
"The Jury impanelled in this instance are prominent and substantial citizens and who unquestionably would not permit any bias or prejudice to affect or influence them in reaching their verdict. The Court so specifically charged them. Whether the fact contained in Defendant's Motion as to one of the Jurors is true or not true, was and still is unknown to the Court. All of the jurors were closely examined by the defense counsel, and duly accepted. The defendant, on the day of his arraignment, was served with a list of the jury *Page 1024 
venire affording him and his counsel, full inquiry into its personnel. The defense did not exhaust its peremptory challenges. It is well settled that an accused enjoys not the right of selection but the right of rejection.
"The Court is of the opinion that the accused received a fair and impartial trial and that the verdict of the jury is in full accord with the law and the evidence."
The mere fact, if it be true, that the father of one of the jurors was killed by a Negro, and the further fact that the accused was a Negro, would not disqualify that juror from serving on the jury.
According to Article 172 of the Code of Criminal Procedure, the qualifications of jurors are that they shall be citizens of this state, not less than 21 years of age, bona fide residents of the parish for one year next preceding such service; that they shall be able to read and write the English language, shall not be under interdiction or charged with any offense or convicted at any time of any felony, and in addition thereto they shall be persons of well known good character and standing in the community. According to the per curiam of the trial judge and statements made in their brief by counsel for defendant, each of the jurors possessed all these qualifications.
Article 351 of the Code of Criminal Procedure sets forth the special causes for which a juror may be challenged by the defendant. These causes are (1) that he is not impartial, the cause of his bias being immaterial; (2) that the relations *Page 1025 
"whether by blood, marriage, employment, friendship or enmity, between the juror and the accused, or between the juror and the person injured, are such that it must be reasonably believed that they would influence the juror in coming to a verdict"; (3) "That the juror served on the grand jury which found the indictment, or on a petit jury which once tried the defendant for the same offense, or on the coroner's jury that investigated the homicide charged against the accused".
Clearly, therefore, the mere fact that the father of one of the jurors had been killed by a Negro did not disqualify that juror from serving on the jury, nor did that fact, if it were true, afford a legal ground for challenging him by the defendant. Therefore, in order to sustain the motion for a new trial, we would have to assume that such "enmity" existed between the juror and the accused that it must be reasonably believed that it would "influence the juror in coming to a verdict". Counsel have suggested no reasonable ground for such assumption. They do not say in their bill, nor do they suggest in their brief, that the killing of the juror's father by the Negro was a felonious homicide. So far as the lower court was informed, and so far as we know, the Negro may have killed the man accidentally.
Counsel for defendant set out in their motion that, "even though as a matter of legal right, your defendant may not be entitled to a new trial, your defendant urges upon the Court that the ends of *Page 1026 
Justice would be served by the granting of a new trial".
The trial judge stated in his per curiam that the verdict of the jury was in full accord with the law and the evidence.
For the reasons assigned, the verdict and sentence are affirmed.