57 So.2d 755

**STATE v. LAMISON.**

No. 40548.

Jan. 14, 1952.

Rehearing Denied Feb. 18, 1952.

John D. Nix, Jr., New Orleans, for defendant-appellant.

Bolívar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severn T. Darden, Dist. Atty., Phil Trice, Asst. Dist. Atty., New Orleans, for appellee.

MOISE, Justice.

George Lamison was indicted for the murder of Paul James Williams on October 14, 1950; he was tried, convicted and sentenced to death by electrocution. From the judgment and sentence, he has prosecuted this appeal, relying upon four bills of exception for a reversal.

Bill of Exception No. 1 was reserved to the sustaining of the State's objection to the following question propounded by defense counsel to the victim's widow: "Was your husband a man of mean disposition or a quiet disposition?" At the time this question was asked there

had been no "proof of hostile demonstration or of overt act on the part of the person slain." Only three witnesses had appeared: (1) Joseph Christina, a photographer for the New Orleans Police Department, who appeared to identify a photograph he had taken of the body at the scene of the crime immediately after its commission; (2) Dr. Robert E. Gillaspie, Assistant Coroner, Orleans Parish, who testified that he had found the body as shown in said photograph and that his post mortem examination disclosed the cause of death to have been "a gunshot wound of the head with laceration and hemorrhage of the brain"; and (3) Ruth Williams, deceased's widow. The per curiam of the trial judge states, and our examination of the record bears out the statement: "Not one word of testimony had yet been elicited from any witness as to the fatal difficulty, at the time the questions objected to were propounded by the defendant. Incidentally, it will be noted that the witness finally answered the question negatively." The statutory law and settled jurisprudence of this state are that in the absence of proof of a hostile demonstration or of an overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the defendant is not admissible. LSA–R.S. 15:482, Code Crim. Proc. art. 482; State v. Washington, 184 La. 544, 166 So. 669; State v. Stracner, 190 La. 457, 182 So. 571; State v. Malmay, 209 La. 476, 24 So.2d 869. The objection of the State was properly sustained.

■■ Bill No. 2 was taken to the overruling by the court of defendant's objection to certain testimony of Sergeant Robert Lampard, New Orleans Police Department, under the following circumstances. The photograph of the victim's body at the scene of the crime, taken by Joseph Christina, and mentioned supra, had been offered in evidence without objection by the defendant. It had also been shown to the victim's widow, Ruth Williams, and defense counsel asked her:

"Do you know what that is that your husband had in his hand? A. A bottle.

"Q. What is it? A. A bottle."

The witness, Annie Mae Evans, who had been deceased's companion during the evening of the fatal occurrence, also testified that there had been a beer bottle in Williams' hand at the time she left the scene to go to the precinct station to make a statement and further, "that is the same bottle of beer that he had when we walked into the joint." Thereafter, Sergeant Lampard was asked if "that object" [i. e., the bottle in deceased's right hand] was in that position at the time of his arrival on the scene; defense counsel objected, on the ground that Sergeant Lampard had not been there at the time the photograph had been taken. We incorporate in our opinion the trial judge's per curiam to this bill as amply disposing of defendant's objection:

"The inquiry was proper, legal and relevant as reflecting the scene of the killing,

and the presence of physical objects connected with, or surrounding the fatal difficulty. Certainly, defendant's objection to his identifying on the photograph the body, its position, or the beer bottle in deceased's right hand, as correctly reflecting the conditions found by him on his arrival at the scene, is without merit on the grounds urged by defendant. The fact that he was not there at the time the photograph was taken was of no consequence.

"Defendant's statement in the reservation of his bill concerning 'the introduction of the photograph', is also without legal effect, as the photograph had already been introduced in evidence without objection by the defendant." ·  •

Evidence admitted without objection cannot be objected to when reiterated. State v. Holmes, 40 La.Ann. 170, 173, 3 So. 564; State v. Allen, 203 La. 1016, 14 So.2d 821.

██ Bill No. 3 relates to the refusal of the trial judge to give twenty-two special charges requested by counsel for defendant, the Court ruling that these charges either were not the law or else that they had been covered in the general charge. We have carefully checked all of the twenty-two special charges requested against the general charge delivered by the trial judge, and find that the latter covers all save charges numbered seven, eight and nine relating to "malice." As to these, we adopt the statement in the trial judge's per curiam as our own: "The present definition of the crime [murder] does not contemplate the neces-

sity of charging 'malice' or 'malice aforethought' as an ingredient to the crime of murder." See also, LSA–R.S. 14:30, Code Crim.Proc. art. 740-30; State v. Frazier, 209 La. 373, 24 So.2d 620.

Bill No. 4 was reserved to the court's action in overruling defendant's motion for a new trial. The motion urges the following as grounds therefor: (1) that the jury failed to give defendant the benefit of a reasonable doubt in that the State failed to prove that the broken beer bottle in deceased's right hand had not been "planted" by someone desirous of convicting accused nor did the State offer any evidence to show that the knife, which Lamison testified deceased had held in his hand, had not been surreptitiously disposed of by someone interested in securing the conviction of accused; (2) that George Hunter, who was an eyewitness to the tragedy, should have been produced by the State, and the only explanation offered was a telegram to show he was in a Federal Reformatory in Oklahoma at the time of the trial [in brief counsel urges that he was not apprised of this fact until the trial was in progress]; (3) that there was error in permitting the Assistant District Attorney to propound to defendant questions relating to previous charges against him, of some of which he had been acquitted, and others not; (4) that the Court erred in its general charge relative to flight, because there had been no flight [the record discloses that accused left the scene immediately, contacted his

attorney a few hours later, and then surrendered voluntarily]; (5) that accused had been compelled to "bear witness against himself" by demonstrating in conjunction with the Assistant District Attorney how Williams had "struck at him with a knife or attempted to strike" [the jury gave no credence to this defense]; (6) that the indictment was not in line with the statute on the subject of "Murder" [cf. Bill No. 3]; and finally, (7) that the Court erred in refusing the special charges.

The first, sixth and seventh of these grounds have already been disposed of in connection with Bills Two and Three. With regard to the second, it appears from the trial judge's per curiam that defendant did not even apply for service of summons to ensure the presence of George Hunter at the trial. With regard to the third ground, LSA-R.S. 15:495, Code Crim. Proc. art. 495, specifically sanctions such inquiries. See also, State v. Guillory, 201 La. 52, 58, 9 So.2d 450, 451, and cases therein cited. Furthermore, the general charge adequately instructed the jury on the law applicable to the reception of such evidence, as follows: "If you find from the evidence that the defendant, before the crime for which he is now on trial, had been convicted of other crimes and had been arrested for other offenses, and if you also find from the evidence these [sic] these previous crimes and offenses had no connection with the charge in the indictment for which he is now on trial, then I charge

you that you are not to consider his having been arrested or convicted of the said previous offenses and crimes as proof of his guilt of this charge, but you are to consider such previous arrests and convictions only in deciding the weight you are to give to his testimony as a witness."

The fourth and fifth grounds of the motion for new trial are likewise without merit. We quote from the per curiam covering them, as follows: "Defendant claims that the court erred in having instructed the jury on the law of flight in its general charge, as being inapplicable to the facts, as there was no proof of flight. * * The court is in emphatic disagreement with defendant's assertion or conclusion that there was no evidence of flight in the record justifying the court's charge on the law of flight. * * * The charge on flight was proper in the light of the evidence, and was a correct expression of the law on this subject."

Defendant and his two companions all testified that immediately after the shooting, they drove away in a car; five hours later, on advice of counsel, he voluntarily surrendered, the Police Department having already begun to search for him.

"The official transcript shows, that while the defendant was under cross-examination, the state, having asked defendant to describe the manner of deceased's alleged attack upon him at the time he fired the fatal shot, and with more particularity the position of the hands of deceased, and, the

defendant having illustrated with his hands deceased's conduct, the following occurred:

" 'Q. How about demonstrating on me then what you did?

" 'Mr. Nix [defense counsel] : I object to his asking him to demonstrate on the district attorney.

" 'The Court: The objection is overruled.

" 'Mr. Trice [Assistant District Attorney] : I am not going through the motions. What you did? [sic]' "

"The defendant then continued his story illustrating with his own hands what he claims defendant did, and without any aid or assistance from the assistant district attorney as a model or otherwise. In other words, the defendant having heard his counsel's objection to the assistant district attorney's invitation for him to demonstrate or illustrate upon him what defendant did, merely stared at the state's representative and made no move or effort whatsoever to comply with the invitation. The assistant District Attorney, in the light of defendant's attitude, walked back to his desk, and in no manner, shape or form, did he persist or insist upon defendant demonstrating upon his person what it is alleged defendant did at the time he was supposedly attacked by the deceased. At no time was defendant compelled 'to bear witness against himself', or to do anything of any kind even remotely suggestive of same. The objection having been recorded, the defendant made no move to accept the invitation to demonstrate, and the state then and there failed to pursue same."

 There is no merit to the contention that the indictment should have charged a specific intent to kill or to inflict great bodily harm. It was drafted in the short form prescribed by LSA–R.S. 15:235, Code Crim.Proc. art. 235, and approved by this court in countless cases.

For the reasons assigned, the conviction and the sentence are affirmed.