HAMITER, Justice.
A jury in the Criminal District Court for the Parish of Orleans declared Harry Cage, the defendant herein, guilty of the offense of aggravated rape committed on April 30, 1952; and, as a result, he received a sentence of death by electrocution.
This appeal followed, the transcript thereof containing for our consideration six formal bills of exceptions.
While the prosecuting witness was testifying to circumstances relating to the allegéd rape (under direct examination by the State’s attorney) the following occurred:
“Q. He forced you on the couch? A. That’s right.
“Q. • After he forced you on the couch ■ you • say • he' attacked you ? A. Yes; sir.' ...
“Q. Now what do you mean by his attacking you, Mrs. Cathey? Did he have sexual—
“Defense Counsel:. Objection and ask for a mistrial.
“The Court: Denied. Gentlemen — ”
To the Court’s refusal to order a mistrial defense counsel reserved a bill of exceptions in which complaint is made that the question being propounded when objection was announced suggested the answer desired and was therefore leading.
If the interrupted and unanswered question be considered as leading (there is doubt that it was, for an answer of either “yes” or “no” would have been appropriate) we are satisfied that by it the defendant was not prejudiced. The indictment charged aggravated rape upon the witness, and in all.probability the jury had construed her previous testimony about an attack having occurred on the couch .as referring to the commission of an act of sexual intercourse. Moreover, the witness later testified, with no objection having been urged, that the defendant sexually attacked her two other times in the same period of about an hour that he was in her home.
During the direct examination of Dr. Philip Sunseri, a next-door neighbor of the prosecuting'witness who was summoned by her immediately after the occurrence of the alleged acts of rape, defense counsel reserved another bill of exceptions under the following circumstances:
*70 “Q. Will you describe to the jury just what this little lady’s physical condition was ? A. Very much upset, very much nervous, crying and wringing her hands and she kept on saying, ‘My babies, my babies,’ and she said a Negro had been in her house and raped her 3 times—
“Mr. Fernandez: Your Honor please, I am going to have to object to this witness repeating because that is hearsay. The lady took the witness stand and she gave her own testimony. Now the fact that she did make a complaint to this Doctor she had been raped I make no objection to, but all this repetition she can testify to herself—
“Mr. Luzenberg: As far as you can go, there was a complaint made.
“Colloquy between Mr. Fernandez and Mr. Gulotta.
“The Court: Proceed.
“Mr. Gulotta:
“Q. Then she did tell you that—
“Mr. Luzenberg: Object to that and reserve a bill.
“The Court: Objection sustained; strike it from the record.
“Mr. Luzenberg: Reserve a bill to the question of the District Attorney, after warning- by the court, and make the question of the District Attorney part of my bill.
“The Court: The Court sustained the objection of the defense and instructed the jury to disregard it— strike it from the record.”
Counsel’s contention in connection with this bill, as we appreciate it, is that the judge should have declared a mistrial on his own motion after sustaining the objection. We do not agree. The judge’s ruling and his admonition to the jury foreclosed repetition of the evidence, the apparent basis of the objection, and prevented injury therefrom to the defendant.
Bills of exceptions were also reserved to the overruling of defense objections made to the testimony of officers Guy Lartigue and Thomas Gregson, counsel contending that those State witnesses were improperly permitted .to testify as experts on fingerprinting, they having been incompetent. The bills are without merit. Officer Lartigue was not offered as an expert, and he testified only to facts about which he had actual knowledge. Officer Gregson, on the other hand, was permitted to give expert testimony after the judge had concluded that he was fully qualified; and with the conclusion we find no error. As correctly stated by the judge in his per curiam:
“It was shown that Officer Gregson- had been employed in the Bureau of Identification, New Orleans, Police Dept., for 9% years and during this 9% years his duties were identification work, fingerprint classifying and identifying prints, that he studied under Major Maurice O’Neill,-perhaps *72 one of the most capable fingerprint authorities in the country, and Captain Kincaid, present head of the local Bureau of Identification of the New Orleans Police Dept., and that he (Officer Gregson) had studied various books and authorities on the subject and that, furthermore, he had never failed to qualify as an expert in any court in which he was called upon to testify.”
The defendant offered himself as a witness, and while he was testifying under cross-examination the following took place:
“Mr. Gulotta:'
“Q. When you were arrested in connection with this charge you made a statement did you not?
“Mr. Fernandez: Object to any statement when no statement offered in evidence by either the State or Defense—
“Mr. Gulotta: Nothing in the opening statement because—
“Defense: I ask for a mistrial.
“The Court: Mistrial denied.
“Defense: Reserve a bill.
“(Note: Lengthy colloquy at' this point between counsel.)
'“Mr. Gulotta: The State will withdraw that question.
“The Court: The question is withdrawn.”
Under the mentioned bill of exceptions reserved to the judge’s denial of a mistrial, defense counsel argue that when the district attorney in the propounded question spoke of a “statement” made by defendant upon being arrested the jury knew and understood he was referring to a written confession; that the reference was wholly improper, the State having failed to mention any alleged confession in its opening statement; and that the use of the inadmissible confession for the purpose of cross-examination greatly prejudiced the defendant. Then, in support of that argument, counsel cite and rely on State v. Ward, 187 La. 585, 175 So. 69 in which this court held to be reversible error the cross-examining of a defendant with reference to his admission of guilt contained in a confession about which no mention had been made in the opening statement of the State’s attorney.
But in the instant matter, unlike the circumstances of the Ward Case, it does not appear that the district attorney questioned the defendant in the presence of the jury regarding his having allegedly admitted guilt. True, in the query that was objected to, never answered, and specifically withdrawn, the official did refer to a statement. However, there are several kinds and forms of statements; and insofar as the members of the jury were concerned the reference made might well have been construed to" mean a mere remark denying guilt. Certainly there is nothing in the record to indicate the existence of a belief on their part that a confession was meant. Defense counsel’s assertion of knowledge and *74 understanding by the jury that a confession was being referred to is unsupported; it is wholly conjectural; and it amounts to no more than an assumption. We cannot conclude, therefore, that the assailed and withdrawn question caused injury to the defendant.
The remaining bill of exceptions was reserved to the overruling of a motion for a new trial. It need not be discussed, for contained therein is only a reiteration of the various other bills of exceptions herein-above considered.
For the reasons assigned the conviction and sentence are affirmed.