93 So.2d 676

**STATE of Louisiana**

v.

**Vincent DI VINCENTI.**

No. 43168.

Jan. 21, 1957.

Rehearing Denied Feb. 25, 1957.

Racivitch, Johnson, Wegmann & Moule-doux, Guy Johnson, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Phil Trice, Asst. Dist. Atty., Louis Fenner Claiborne, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

Vincent DiVincenti having been convicted and sentenced [1] on a bill of information charging him with gambling in violation of RS 14:90, in that he operated a racehorse handbook, prosecutes this appeal, relying for a reversal thereof on a number of alleged errors committed during the course of the trial that are presented for review in eight bills.

The first bill was reserved when the trial judge denied the motion for a continuance filed by counsel for the accused on the morning of April 16, 1956, predicated on the contentions that (1) defense counsel was scheduled to try an adoption matter in the juvenile court that same morning, and (2) accused was served with notice of trial less than 48 hours prior thereto and, therefore, was not only given insufficient time in which to prepare his defense, but was also unable to secure subpoenas summoning witnesses.

"The granting or refusing of any continuance is within the sound discretion of the trial judge; provided, that any arbitrary or unreasonable abuse of such discretion may be reviewed by the proper appellate tri-

---

1. Accused was sentenced to pay a fine of $305 and to serve 3 months in the Parish Prison and, in default of payment of the fine, to serve an additional 60 days.

bunal on appeal. * * *" RS 15:320. See, also, State v. Wilson, 33 La.Ann. 261; State v. Flores, 169 La. 22, 124 So. 132; State v. Henry, 196 La. 217, 198 So. 910; State v. Laborde, 214 La. 644, 38 So.2d 371; State v. Prejean, 216 La. 1072, 45 So.2d 627; and State v. Thompson, 228 La. 342, 82 So.2d 33.

The facts of the case as stated by the trial judge in his Per Curiam clearly disclose this bill is without merit. Defendant, who was free on bond, was arraigned on March 19, 1956, in the presence of his counsel and pleaded not guilty. His case was fixed for hearing on Monday, April 16, 1956, and notice thereof was served on his attorney on the following day, on his bondsman on April 5th, and on his mother on April 14, 1956, at 3411 Piedmont Drive, the address given in the bail bond. The deputy sheriff making the service testified he had been unable to serve the defendant personally because he had secured no response to his knocks at this address although he had gone there on three previous occasions. Furthermore, in accordance with the court's announcement at the time the motion was denied, the defendant, at the termination of the state's case, reurged the motion and was then granted additional time, that is, until April 30, 1956, in which to produce his witnesses. On that date counsel presented all witnesses and evidence on defendant's behalf. Under these circumstances there has clearly been no abuse of discretion by the trial judge in this instance. Moreover, it cannot be said defendant's cause was prejudiced in any manner by this ruling.

■ Bill of Exceptions No. 2 was reserved when the trial judge, over defendant's objection, permitted the testimony of one of the arresting officers with respect to the tenor and substance of two telephone calls coming into the raided establishment after the arrest, it being defense contention that such evidence, heard only by the officer who was testifying, was hearsay and, as such, inadmissible.

The trial judge, after quoting the testimony objected to in detail in his per curiam —showing the first call gave information with respect to the result of the third race at the Fair Grounds while the other caller, addressing the defendant under the name of "Big Eye," one of the aliases by which he was known in gambling circles, placed several bets which the officer recorded on a piece of paper and turned in as evidence—pointed out that for all practical purposes this identical issue has already been decided adversely to the defendant in the recent case of State v. Compagno, 230 La. 657, 89 So.2d 158, 160, wherein we said: "We agree with the trial judge that this testimony related to a matter constituting a part of the res gestae; and that it was further relevant and

admissible for the purpose of connecting this defendant with the gambling operation and in proving the element of intent."

However, defense counsel strenuously objects in brief to this evidence being classified as "res gestae," and, as such admissible under an exception to the hearsay rule. It is counsel's contention that the "test of admissibility of res gestae is the spontaniety of the utterance or occurrence," and the events established by this testimony occurred after the commission of the crime and also after the "accused was in custodia legis," the time factor being given no consideration by the trial judge.

■ The test thus ascribed for the admissibility of hearsay evidence as a part of the res gestae is incorrect. As stated in Wharton on Criminal Evidence, "In some states (Louisiana is one of these states), res gestae is given an even broader definition to include not only spontaneous utterances, and declarations made before and after the commission of the crime, but also to include real or demonstrative evidence relevant to the crime; and to include testimony, offered at the trial, of witnesses and police officers as to what they had heard or observed before, during, or after the commission of the crime; all that occurred at the time and place of the crime, or immediately before or after the crime if causally related thereto * * *." (Par-enthesis ours.) Vol. 1, page 624, Sections 279, etc. See, also, State v. Schmidt, 163 La. 512, 112 So. 400; State v. Bradford, 164 La. 423, 114 So. 83; State v. Dale, 200 La. 19, 7 So.2d 371; State v. Walker, 204 La. 523, 15 So.2d 874; 20 Am.Jur. 558, Section 667; and 1 Conrad's Modern Trial Evidence 303, Sections 391, etc.

■ The third Bill of Exceptions, also clearly without merit, was reserved when the trial judge accepted Officer Hugh Hearty as an expert on the operation of racehorse handbooks over defendant's objection which was ostensibly based on the fact that the officer had never owned, operated, or worked in a handbook, and had never actually been inside of one except in his official capacity as a police officer.

The trial judge points out in his Per Curiam that as a predicate to the admission of the testimony of Officer Hearty it was not only established that he had been with the police department for 14 years (5 with the vice squad), during which time he had participated in many handbook raids, had attended police school for instruction in this respect and had actually been an instructor on the subject, but that he had been "qualified and accepted as an expert on the operation of handbooks and the recording of handbook bets, some 15 or 20 times, in all of the City and State courts in the Parish of Orleans, as well as in the court in which he was then testifying; that he had never been rejected as

an expert on race horse handbooks in any court." See, Article 466 of the Louisiana Code of Criminal Procedure, RS 15:466; State v. Burkhalter, 211 La. 342, 30 So.2d 112; State v. Carter, 217 La. 547, 46 So.2d 897; State v. Cage, 224 La. 65, 68 So.2d 759; State v. Nicolosi, 228 La. 65, 81 So.2d 771; and the recent case of State v. Compagno, 230 La. 657, 89 So.2d 158, where this identical issue was decided adversely to the contention of the accused.

■ Bill of Exceptions No. 4 was reserved while defense counsel was examining Officer Hearty who, after testifying he could not tell as an expert the meaning of the figure "6" found on a piece of paper in the possession of the accused at the time of the raid since there was nothing following the figure to designate what significance it might have, was asked for his *"personal"* opinion on the matter. This question was not permitted upon objection of counsel for the state.

It is obvious that any answer given by Officer Hearty as to the meaning and effect of this figure "6" written by itself on this scrap of paper would have been purely conjectural, and his personal opinion was, therefore, properly excluded. RS 15:465; State v. Snowden, 198 La. 1076, 5 So.2d 355; 20 Am.Jur. 650, Section 780; and Conrad's Work on Modern Trial Evidence, Vol. 1, page 577, Section 692. As stated in the latter authority, "An expert's opinion must not be based on mere guess or conjecture but must be based upon facts and data, which must measure up to the legal requirements of substantial and probative evidence."

The fifth bill was reserved when the defense sought to elicit from two witnesses, employed in the revenue and treasury departments of the Federal government, information as to whether they had (1) authorized the arrest of the accused, (2) ordered his release later that same day along with others taken into custody at the same time, (3) were investigating persons other than the accused, these persons being among those arrested with the accused at the time of the raid; (4) verbally accused another party of the actual operation of this handbook, (5) had in their custody certain (unnamed and undesignated) evidence; and (6) had exhibited to accused and his counsel certain (also unnamed and undesignated) evidence. The trial judge not only ruled that all of the evidence and/or information sought by counsel was inadmissible in the instant case as irrelevant and immaterial to the crime with which the accused was charged, but also that the witnesses were protected from answering under regulations of the Treasury Department of the United States which prohibited them from testifying to facts coming to their knowledge in their official capacities without express authority from the Commissioner.

■■■ Pretermitting the question of whether these witnesses were in fact privileged not to testify to any and all facts coming within their knowledge in their official capacities, under the jurisprudence the trial judge has the discretion of determining what is and what is not relevant and material evidence, and his ruling in this respect will not be disturbed in the absence of obvious error. State v. Bouvy, 124 La. 1054, 50 So. 849; State v. Walker, 204 La. 523, 15 So.2d 874. It was not shown, so far as the bill reflects, that these witnesses were present at the time of the raid, had any personal knowledge of matters connected therewith, or that the testimony sought to be elicited from them had anything to do with the crime committed and the arrest of the accused therefor. The questions propounded were, by their very tenor, in the nature of a "fishing" expedition. Under these circumstances we cannot say the trial judge's ruling was erroneous.

Bills of Exceptions Nos. 6 and 7 (the former reserved when the judge refused a new trial and the latter when he denied a motion in arrest of judgment) are considered together inasmuch as they are predicated on identical contentions, that is, that the verdict of guilty is contrary to the law and the evidence since it was not shown by any affirmative act that the accused intentionally committed the crime of gambling as denounced by RS 14:90.

■■■ The Constitution of Louisiana grants to the Supreme Court authority to review criminal cases on questions of law alone. Section 10 of Article VII. It is only where it is contended there is no evidence at all tending to prove the crime charged, or some essential element thereof, that the question posed becomes one of law and we are authorized to review the testimony for the purpose of ascertaining whether there is, in fact, evidence, either direct or circumstantial, that would support the conviction. State v. Seiley, 197 La. 405, 1 So.2d 675; State v. Hardy, 198 La. 1048, 5 So.2d 330; State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Vallery, 214 La. 495, 38 So.2d 148; State v. Roberts, 224 La. 491, 70 So.2d 100; and State v. Turner, 228 La. 202, 81 So.2d 861, and the authorities therein cited. We find there was not only some evidence of guilt in this case, but that there was ample evidence upon which the trial judge's conclusion that the accused was guilty as charged could have been based, as has been painstakingly pointed out by him in his lengthy Per Curiam to this bill wherein he reviews all of the evidence introduced during the trial. There is, consequently, nothing for us to review in connection with this bill.

■■■ The final bill is equally without merit. This was reserved when the trial judge, many weeks after the accused had been tried and convicted, refused to reallot

this case in accordance with defense motion filed on the morning of July 9, 1956, under the provisions of Act 8 of 1956 creating two new sections of the Criminal District Court for the Parish of Orleans. Section 6 of this act provides: "All cases *pending*, or hereafter filed, in the Criminal District Court for the Parish of Orleans shall, upon the creation and organization of Section 'G' and 'H', herein provided for, be equally allotted amongst all of the Sections of said court, including Section 'G' and Section 'H' herein created. All other provisions relative to allotment, not in conflict herewith, shall remain as now provided by law.". (The emphasis has been supplied.)

Obviously the legislature, by the use of the word "pending" in this statute, could not have intended thereby that cases that had already been tried and a conviction secured were to be included in the reallotment. To hold otherwise would lead to the anomalous situation that a person might be tried twice on the same evidence and for the same offense, which is contrary to our constitutional guarantee. that no "person shall be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained." Section 9 of Article I of the Constitution of 1921.

For the reasons assigned, the sentence. and conviction are affirmed.