171 So. 829

**STATE v. BASS.**

No. 34070.

Nov. 4, 1936.

On Rehearing Jan. 4, 1937.

Jack & Jack, of Shreveport, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and James U. Galloway, Dist. Atty., of Shreveport, for the State.

HIGGINS, Justice.

Defendant was indicted for the murder of his twenty-four year old son, who had at one time been confined to an insane asylum, but, at the time of his death, was residing with his father and stepmother.

The deceased was found dead in bed, in the family residence, on October 15, 1935, at 8 a. m., as a result of having been shot twice with a revolver, one bullet having entered the head slightly above and to the right of the right ear, lodging in the left cheek, and the other entering slightly below the right ear, passing through the head and lodging under the skin just above the left ear.

The State contended that the accused shot and killed his son on October 14, 1935, at about 10 o'clock p. m., in order to collect a $5,000 insurance policy on the life of the deceased, in which he was named the beneficiary.

The theory of the defense was that the young man was mentally unbalanced, nervous, and despondent and committed suicide, or that some person other than the defendant killed him.

The jury found defendant "guilty as charged, without capital punishment," and the judge sentenced him to life imprisonment. A motion for a new trial and a motion in arrest of judgment were overruled, and defendant has appealed.

There were a number of bills of exception reserved and they are grouped by counsel for defense under the following "specification of errors":

"I. The Court erred in overruling defendant's motions to quash the lists of tales jurors who had all been purposely selected by the Clerk of Court from the corporate limits of the City of Shreveport and especially in view of the fact that the clerk selected the names from the telephone book and gave them to the jury commissioners who had nothing to do with their selection.

"II. The Court erred in failing to give the jury defendant's special requested charge number seven, to-wit: 'The fact that the defendant had a preliminary hearing to seek bond has no bearing on his guilt or innocence in this case and it should be disregarded by you.'

"III. Where the deceased was found dead with two bullet holes in the right side of his head and the State claimed there were powder burns around only one of the holes, the Court erred in admitting in evidence an experiment performed out of court and out of the presence of defendant and his counsel and without their knowledge, by the sheriff firing a pistol, with a half inch shorter barrel than the one used in the case and loaded with different makes of cartridges than those in the case, against a piece of white pasteboard for the purpose of demonstrating the effect of powder burns at various distances."

■ ▪It appears that in selecting and impaneling the jury in this case, the regular jury venire list, as well as 400 prospective tales jurors, was exhausted. After the regular criminal venire list and the hundred names in the original tales box had been depleted and the tales jury box had been refilled by the jury commission at the judge's order, and 50 names had been drawn therefrom for jury service, the defendant objected to this list of 50 names on the ground that the clerk of court had filled the tales box that morning with the names of 100 people residing within the corporate limits of the city of Shreveport, and that there had been a systematic exclusion of people living outside of the city of Shreveport, who were qualified to serve as jurors. The defendant had the clerk of court sworn, and he testified that he had selected more than 200 names from the telephone directory of the city of Shreveport, because those persons could be easily served, and that he had given them to the jury commissioners. The court overruled the defendant's objection to the list of tales jurors, and he reserved bill of exception No. 3½.

The same issue was again presented when the list of 50 tales jurors was exhausted and the defendant objected to another list of tales jurors on the same or identical grounds. The court overruled the objections and Bills of Exception Nos. 4, 6, 7, 9, and 11 were reserved. The legal question presented in all of these bills was renewed in the motion for a new trial and in the motion in arrest of judgment, both of which were overruled, the defendant reserving Bills of Exception Nos. 51 and 52, respectively.

From each of the 6 tales juror lists, which the defendant objected to, there were selected one or more jurors, who served in the trial of the case.

The judge in his per curiam states:

"The selection of names of tales jurors rests within the discretion of the jury commissioners and no law requires that they be selected from any particular locality. After the tales jury box was first depleted, the jury commission, having been ordered to duly refill the same, selected names of citizens of Shreveport, Ward No. 4 of Caddo Parish. Similar action has been sustained by the Supreme Court. * * *"

In the case of State v. Evans, 137 La. 379, 68 So. 732, it was held that the selection by the jury commission of tales jurors from one ward of the Parish of Rapides, in which the city of Alexandria is located, in no way affected the qualifications, as jurors, of the tales jurors so drawn.

In the case of State v. Dunn, 161 La. 532, 109 So. 56, it was held that the jury commissioners, in the absence of fraud or wrongdoing, were authorized, in their discretion, to select tales jurors from the city of Lake Charles and the ward in which it was situated.

It is argued that considerable publicity was given to the ruling and opinion of the trial court in refusing to grant the defendant bail on a preliminary hearing, and that the residents in Shreveport, and particularly the class of people listed in the tele-

phone directory, read the newspaper articles and were influenced and prejudiced thereby.

The pertinent part of article 351 of the Code of Criminal Procedure reads, as follows:

"1. That he is not impartial, the cause of his bias being immaterial; but an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror."

In the case of State v. Flores, 169 La. 22, 124 So. 132, the above article was applied.

The jury commissioners had the right to have the clerk of court assist them in securing a list of names and in the absence of fraud or wrongdoing, this circumstance does not affect the validity of the selection of the names.

In the instant case, no suggestion of improper intention or motive on the part of the commission is made. It is not sufficient cause to challenge the venire, because of a defect in the manner of selecting the jury, or in the composition, summoning, or proceedings of the jury commission, unless some fraud has been practiced or some wrong committed that would injure or prejudice the rights of the accused. Article 203, Code of Criminal Procedure; State v. Taylor, 44 La.Ann. 783, 11 So. 132; State v. Johnson, 116 La. 856, 41 So. 117; State v. Smothers, 168 La. 1099, 123 So. 781; State v. Bussa, 176 La. 87, 145 So. 276.

Bill of Exception No. 50 was reserved to the trial court's refusal to give the following requested special charge to the jury: "The fact that defendant had a preliminary hearing to seek bond has no bearing on his guilt or innocence in this case and it should be disregarded by you."

It was shown that on November 21, and 22, 1935, the accused was given a preliminary hearing, and the trial judge, in refusing to admit him to bail, gave written reasons, which were published in two daily newspapers of the city of Shreveport. It also appears that, in order to contradict the defendant, who took the witness stand in his own defense, the State used his testimony given at the preliminary hearing.

Counsel for the defendant argues that under the provisions of article 390 of the Code of Criminal Practice, the accused was entitled to have the requested special written charge given to the jury, since it was pertinent, and the general charge was insufficient, citing State v. Atkins et al., 136 La. 844, 67 So. 926.

The trial judge, in his per curiam, states:

"The minutes of the Court as to the preliminary hearing and the action taken therein by the presiding judge were not in evidence before the Jury. The Court repeatedly throughout the trial, admonished the jury that they were to try this case upon the law and the evidence given and adduced during the trial; that they were to disregard everything else in reaching their verdict; that the defendant was presumed to be innocent; that the burden was upon the State to prove his guilt as re-

quired by the law, which burden never shifted. The general charge of the Court was to the same effect.

"The proceedings and results of the preliminary hearing had no part in the case and were, therefore, not a proper subject of specific comment by the Court. The jury cannot be presumed to have been influenced by what may have appeared in the newspapers prior to the trial, and not in evidence especially when every juror was questioned thereon on voir dire and where each one answered on oath that newspaper comment or reports concerning the case had either created no impression upon him or he could and would entirely disregard same."

 It is our opinion that the newspaper publicity given to the written reasons of the district judge in refusing to admit the defendant to bail, and the fact that the testimony of the defendant, on the preliminary examination, was used in the trial of the case on the merits to contradict him, did not place before the jury the action taken, or the result of the preliminary examination, and therefore the requested charge was not "wholly pertinent," as required by article 390 of the Code of Criminal Procedure. Furthermore, under the circumstances, the general charge was entirely adequate. As to any opinion that the jurors might have formed from reading newspaper accounts of the preliminary hearing, article 351 of the Code of Criminal Procedure protects the rights of the accused to disqualify a juror who might have knowledge of the case and who formed a deliberate opinion as to the guilt

or innocence of the accused. If the juror has not formed such an opinion, he cannot be challenged for cause. State v. Flores, 169 La. 22, 124 So. 132; State v. Campbell, 173 La. 831, 138 So. 853. We conclude that the ruling of the trial judge is correct.

 Bills of Exception Nos. 32, 33, and 34 were reserved to the ruling of the trial judge in admitting testimony of experts, as to the result of an experiment conducted outside the presence of the jury and the accused, for the purpose of showing at what distance powder marks or burns will appear on a target, the objection being that the experiment or demonstration was not conducted under circumstances substantially similar to those surrounding the killing of the deceased. These same bills were incorporated in the motion for the new trial and in the motion in arrest of judgment, both of which were overruled, and to which ruling counsel for the defendant reserved Bills of Exception 51 and 52, respectively.

The evidence shows that the mentally deficient son of the accused was found dead in his bed with two bullet wounds on the right side of his head and with a .38-caliber revolver jammed between his shoulder and his neck. Powder burns appeared only on one of the wounds. The State contended that defendant killed his son either to collect $5,000 life insurance, or to relieve himself of the burden of caring for the mentally affected young man, or as an act of mercy, or for all of these motives. The defense sought to show that

the deceased committed suicide because of his mental and nervous condition.

In order to prove that a person other than the deceased fired the shot which inflicted the wound that had no burns or powder marks, the sheriff, as a firearms expert, was permitted to testify, over defendant's objection. He stated that, using the same caliber black powder cartridges which were discharged from the death-dealing weapon, he had fired a .38-caliber revolver, which had a barrel one-half inch shorter than the .38-caliber revolver which caused the death of the deceased, against a white cardboard target, at distances of six, twelve, and twenty inches, and that at each of these distances the powder marks were visible, being more obvious at the closer range, as appeared from the cardboard which was introduced in evidence as an exhibit.

The general rule governing the admissibility of such evidence is stated in 16 C.J., verbo "Criminal Law," § 1094, at page 563, as follows:

"Evidence of an experiment made out of Court is admissible, provided it will enlighten and assist, rather than confuse the Jury, by directly illustrating and tending to establish or to disprove a material issue, and provided the experiment was fairly and honestly made under circumstances and conditions substantially similar to those attending the alleged occurrence." 2 Wharton Crim.Evidence (10th Ed.) § 783 (a), 1541; Daniels v. Stock, 23 Colo. App. 529, 130 P. 1031; State v. Bass, 251 Mo. 107, 120, 157 S.W. 782, 785; Riggs v. Metropolitan St. Railroad Co., 216 Mo.

304, 115 S.W. 969; State v. Allison, 330 Mo. 773, 51 S.W.(2d) 51, 85 A.L.R. 472; Tassin v. New Orleans P. S., Inc. (1932) 19 La.App. 456, 139 So. 695.

This rule has been followed in Louisiana, in both criminal and civil cases. State v. Dunn, 161 La. 532, 109 So. 56; State v. McKowen, 126 La. 1075, 53 So. 353; Seibert v. McManus et al., 104 La. 404, 29 So. 108; Tassin v. New Orleans P. S., Inc., supra.

The question to be determined is whether or not "the experiment was fairly and honestly made under circumstances and conditions substantially similar to those attending the alleged occurrence."

Conceding that the weapon and the cartridges used in the demonstration are substantially similar to the revolver and the cartridges used in the killing of the deceased, a view most favorable to the State, but, without deciding that issue, we shall pass to a consideration of whether or not the pasteboard target upon which the result of the experiment was registered was substantially similar to the human head or human skin and flesh.

The reasons assigned by the trial judge for admitting this evidence appear in his ruling and per curiam covering these bills, as follows:

"The objection is overruled, for the reason that the facts and circumstances under which the experiments were conducted parallel the circumstances existing in this case as far as humanly possible to duplicate the circumstances; there being no black powder cartridges UMC and Peters,

and there being no human being, who desired to be subjected to being shot for experimental purposes. The only distinction between the facts and circumstances of the case and those of the experiment is with reference to the length of the barrel of the pistol, and from that the correct and proper deductions can be drawn by the jury, and on cross examination the difference can be shown in the results that would occur, because of the difference in the length of the two barrels."

"Per Curiam. The witness, Sheriff T. R. Hughes, was duly qualified, together with other witnesses, as an expert on pistols, pistol cartridges, powder, powder loads, etc. The experiment was performed under ʹfacts and circumstances paralleling those shown by the evidence to have existedʹ in the case on trial as far as humanly possible to duplicate. The pistol with which deceased was killed was a 38 caliber S & W and the one used in the experiment was of the same caliber ʹand make. The only difference was that the barrel of the one used in the experiment was one-half (1/2) inch shorter than the other. As to this, the witness, Sheriff T. R. Hughes, and other ballistic experts called and testifying as witnesses, all testified that this slight difference in the length of the barrels would make no material difference in the results. The cartridges used in the experiment and in the killing all contained the same kind of powder, black powder, and were of the same caliber. The only difference in the cartridges was in name, it being testified by several witnesses, qualified as experts, that

the powder. load in all black powder cartridges of the same caliber is the same with all manufacturers.

"The experiment was fairly and honestly made under circumstances and conditions substantially similar to those attending the killing and the Court admitted the evidence because it was calculated to enlighten and assist the jury, by directly illustrating and tending to establish or disprove a material issue in the case. Any objection to the experiment went rather to its weight than to its admissibility.

"For these reasons and the reasons assigned at the time of the ruling, which reasons are embodied in the bill, the objection to the evidence was overruled."

We are assured by the counsel for the prosecution and the · counsel for the defense that there is no Louisiana decision in point.

The courts of Missouri, Florida, Texas and Kentucky, as well as the Fifth United States Circuit Court of Appeal (Ala.), held that the result of an experiment conducted by experts with cardboard being used as a target, to demonstrate powder marks and burns, was not admissible in evidence, because the cardboard was not sufficiently or substantially similar to the human head, skin, and flesh. State v. Allison, 330 Mo. 773, 51 S.W.(2d) 51, 85 A.L.R. 471; McLendon v. State, 90 Fla. 272, 105 So. 406; Morton v. State (Tex.Cr.App.) 71 S.W. 281; Epperson v. Com., 227 Ky. 404, 13 S. W.(2d) 247; New York Life Ins. Co. v. Alman, 22 F.(2d) 98 (C.C.A. 5th [Ala.] Cir.) refusing a writ of certiorari in the

case 277 U.S. 586, 48 S.Ct. 433, 72 L.Ed. 1000; State v. Justus, 11 Or. 178, 8 P. 337, 50 Am.Rep. 470; State v. Hyde, 234 Mo. 200, 256, 136 S.W. 316, Ann.Cas.1912D, 191; 12 Am. & Eng.Ency.Law (2d Ed.) 406, 407; Commonwealth v. Piper, 120 Mass. 185, 188; Jim v. State, 4 Humph. (Tenn.) 289.

The only case which we have been referred to holding the contrary view, i. e., that such evidence is admissible, is Irby v. State, 18 Okl.Cr. 671, 197 P. 526.

The record fails to disclose any expert testimony to show that there is any similarity between cardboard and human skin and flesh in registering powder burns and marks. As a result of the holding of the several above authorities that such evidence is inadmissible, because cardboard and human flesh are dissimilar, a view which is in accord with our opinion, we hold that our learned brother below erred in admitting this evidence. The issue was as to the admissibility or inadmissibility of the evidence and not as to its weight. Once the court concludes that the circumstances are similar and admits the evidence, then the question of the weight of the evidence is a matter for the jury to determine.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict of the jury and the sentence of the district court are annulled and set aside and a new trial granted the accused, and the case is remanded to the district court for further proceedings, according to law and consistent with the views herein expressed.

## On Rehearing.

ODOM, Justice.

The deceased was found dead in his bed with two bullet wounds in the head. His father was prosecuted for murdering him. The theory advanced by the father was that his son had committed suicide by shooting himself. There were powder burns on the head. This, argued counsel for defense, rendered plausible his theory that deceased shot himself. To overthrow this theory the State called the sheriff, who, after qualifying as an expert, was permitted to express his opinion as to how far the muzzle of the pistol was from deceased's head when the fatal shots were fired. He based his opinion upon the results of an experiment he had made by shooting at a target of white cardboard with a pistol substantially like the one which had belonged to the deceased, at ranges from six to twenty inches.

We held on original hearing that the opinion of this expert, based as it was on such an experiment, was inadmissible because, the nature and texture of cardboard being fundamentally different from that of the human body, the experiment was not made under conditions and circumstances "substantially similar to those attending the alleged occurrence."

The argument made by counsel for the State in support of their application for rehearing was that the weight of authority is against our conclusion.

We have examined the jurisprudence further and find that our holding is not against, but in accord with, the views

expressed in a great majority of the cases where the experiments considered were the same or practically the same as the one in this case. The books are full of cases dealing with "experimental evidence," and in all of them the rule that such evidence is inadmissible unless it is shown that the experiment was made "under circumstances and conditions substantially similar to those attending the alleged occurrence" is recognized. And, in practically all the cases, it is said that the question whether or not the experiment was made under such conditions and circumstances as to make the evidence admissible or inadmissible is one which must be determined by the court. But that does not mean that the ruling of the trial court as to the admissibility of such testimony is final, because the rulings of trial courts on the question of the admissibility of evidence are always subject to review.

In the case at bar the "alleged occurrence" was the shooting of a human being in the head. The experiment was made by shooting at white cardboard. Recognizing as we do, and as we have always done, the general rule above stated, we need no precedent to guide us in reaching the conclusion that the trial judge erred in this case by admitting evidence of the experiment. The reason is that there is no similarity between the "kind of stuff or substance," between the nature and texture of the hard, white, cardboard used as a target in making the experiment, and the skin of a human being, and for that reason the conclusion is inescapable that the results

as to powder marks or burns might be quite different.

But, aside from our own personal opinion, we find on further investigation that the weight of authority supports the view that where the "alleged occurrence" was gunshot wounds on the head or on any exposed part of the body and where the target used in making the experiment was cardboard, pasteboard, or white paper, the experimental evidence is inadmissible.

In our original opinion we cited nine cases in support of this view. The first six are in point, but the others, State v. Hyde, Commonwealth v. Piper, and Jim v. State, are not. These were inadvertently included in this group. They may support the general rule, but have no application to white paper or cardboard experiments.

In State v. Allison, which we cited, the experiment was made by shooting at a target made of cotton pasted upon cardboard. Evidence of this experiment was held inadmissible. In McLendon v. State, the experiment was made by shooting at white paper and cloth. In Morton v. State, the experiment was made by shooting at pasteboard. In Epperson v. Commonwealth of Kentucky, the target used for the experiment was white paper. In the Federal case of New York Life Insurance Company v. Alman, the target used for the experiment was cardboard. In State v. Justus, the target was white paper. In each of these cases evidence of the experiment was rejected.

In addition to these cases, which unquestionably support our conclusions, we

now cite the following cases, which are directly in point: Reagan v. State, 84 Tex. Cr.R. 468, 208 S.W. 523, where white paper was used as a target; People v. Solani, 6 Cal.App. 103, 91 P. 654, where white paper was used as a target; McAlpine v. Fidelity & Casualty Co., 134 Minn. 192, 158 N.W. 967, target white paper.

Turning now to the cases cited by the State, we find that only two or three of them are in point, because the substance used as targets was altogether different in nature and texture from cardboard or white paper.

In Thrawley v. State, 153 Ind. 375, 55 N.E. 95, the target used for the experiment was a blotting pad. In Irby v. State, 18 Okl.Cr. 671, 197 P. 526, the targets were a napkin and tissue paper. In Fein v. Covenant Mut. Ben. Ass'n, 60 Ill.App. 274, the target was white paper. These cases are apparently in conflict with those which we have cited in support of our view.

However, the other cases cited by the State are not in point. In State v. Gruber, 150 Wash. 66, 272 P. 89, cited by the State, the experiments were made by shooting at cloth substantially of the same nature and texture as the clothing worn by the deceased. To the same effect is People v. Fiori, 123 App.Div. 174, 108 N.Y.S. 416. In Huestis v. Ætna Life Ins. Co., 131 Minn. 461, 155 N.W. 643, sheets of cotton wadding were used as a target. The State cited People v. Solani, supra, but that case is admittedly against its contentions. The State cited also Boyd v. State, 14 Lea (Tenn.) 161, where the target was cloth like that worn by the deceased; Lillie v. State, 72 Neb. 228, 100 N.W. 316, where the shots which killed the deceased passed through a window curtain and the target used for the experiment was a piece of muslin; Pollock v. State, 136 Wis. 136, 116 N.W. 851, where the target used for the experiment was the vest worn by the deceased at the time he was shot; State v. Copenbarger, 52 Idaho, 441, 16 P.(2d) 383, where experiments were made by shooting at cloth, cardboard, wood fiber, and beef ribs. But the experiments in that case were not made for the purpose of showing powder burns or powder marks, but to show the difference in appearance of the bullet hole through cloth on the entrance and exit sides. And State v. Asbell, 57 Kan. 398, 46 P. 770, 771, 773, where targets of hair and white paper were used. The court said: "We think the testimony was competent for the purpose of determining the effect of a pistol shot fired at human hair, and to show how much the powder marks from that particular pistol would scatter." But it was not held that the experiment with white paper as a target was admissible. In Sullivan v. Commonwealth, 93 Pa. 284, it was shown that there were powder marks or burns "upon the person or clothing of the deceased," and evidence of an experiment where the target was a piece of muslin was admitted.

The Louisiana case of State v. Dunn, 161 La. 532, 109 So. 56, has no application to the case now under consideration.

For an illuminating and exhaustive discussion of the particular point here in-

 

volved, we refer especially to the case of Epperson v. Commonwealth, supra, where numerous authorities are cited and digested.

For the reasons assigned, our former decree is reinstated and made the final decree of the court.