30 So.2d 112

### STATE v. BURKHALTER.
### No. 38423.

March 17, 1947.

Carter & Erwin, of Franklinton, for defendant-appellant.

Fred S. LeBlanc, Atty.Gen., M. E. Culligan, Asst. Atty. Gen., and James T. Burns, Dist. Atty., of Covington, for plaintiff-appellee.

McCALEB, Justice.

The defendant, a colored man, was indicted for the murder of his wife. He was convicted of manslaughter and sentenced to imprisonment in the penitentiary for a period of fifteen years.

The record contains eleven bills of exception, the first three of which relate to the same complaint. These bills were taken during the course of the examination of Wiley Magee, a police officer of Bogalusa, La., whom the State attempted to qualify as an expert on powder burns. After Mr. Magee had testified that he had been a member of the police force of Bogalusa for twenty-two years and that he had considerable experience with all types of firearms (having actually made tests of different types of shotguns to determine the distance from the target at which said guns would make powder burns), he was asked to state the maximum distance a twenty-gauge shotgun with a twenty-six inch barrel, choke bore, fired with sure-shot standard load shell, would cause powder burns and also how far the same type of gun with an open bore would cause such burns.

Counsel for defendant objected to these questions on the ground that the witness had not been given information relative to the velocity of the shell or the kind of powder, whether black or smokeless, or the number of grams of powder in the shell. The judge overruled these objections and, in his per curiam, states that he was of the opinion that the witness had been furnished with sufficient information to intelligently answer the questions. Since the entire evidence of Magee is not in the record, we are bound to accept the statement contained in the per curiam as conclusive for we have no way of ascertaining whether or not the witness had been given essential information in order to enable him to answer the questions.

After Magee had given expert evidence on direct examination respecting the matter above referred to, he was asked by defense counsel whether he had taken any special courses in powder burns or firearms. He answered that he had not; that he was not a ballistic expert and that the evidence he had given was based upon practical experience obtained by him during the twenty-two years he had served as an officer of the Police Department of Bogalusa. Whereupon, counsel asked that all of the testimony of the witness respecting powder burns be stricken from the record and that the jury be instructed to disregard it. The Judge refused the request as he was of the opinion that, since Magee had testified that he had practical experience with all types

of firearms during the past twenty-two years and had conducted tests relative to powder burns in connection with his duties as a police officer, he was amply qualified by actual experience to testify regarding powder burns and firearms in general.

Counsel for defendant argues that it was error to permit Magee to give his opinion in view of his admission that he neither had expert training in the science of ballistics nor had he ever taken a special course on powder burns. The case of State v. Bass, 186 La. 139, 171 So. 829, is cited in support of this contention.

The point is not tenable. It is not necessary for one to take a special course in a particular subject in order to become expert therein unless the subject be of such a scientific nature that skill or adequate knowledge of it cannot be attained by practical experience and observation. See State v. Normandale, 174 La. 835, 141 So. 851. Thus, a police officer, with twenty-two years of experience in handling firearms who has made tests respecting distances at which powder burns will be caused, is qualified to give expert evidence based on the knowledge acquired by practical experience.

The case of State v. Bass, supra, relied upon by the defendant, is not apposite. There, the question for consideration was whether an experiment, conducted outside the presence of the jury and the accused for the purpose of showing the dis-

tance powder marks or burns would appear on a target, was admissible in evidence where it was not made under circumstances substantially similar to those surrounding the killing. The court held that it was error to admit the experiment in evidence, as the cardboard target was not similar to the skin of a human being and that it tended only to confuse the jury.

But, in the instant case, the State did not attempt to offer in evidence the experiments made by Magee relative to the distances at which firearms would register powder burns. The statement that he had made such tests was given only for the purpose of qualifying him as an expert and in compliance with Article 465 of the Code of Criminal Procedure which provides that every expert witness must state the facts upon which his opinion is based. Magee was not undertaking to testify as to the result of an experiment he made with the shotgun which was used in the homicide; he was giving evidence as an expert on powder burns, generally, after stating the facts which qualified him to speak on that subject. See McCrary v. State, 131 Tex. Cr.R. 233, 97 S.W.2d 236.

The fourth bill of exception was reserved to the refusal of the judge to sustain an objection made by defense counsel to a question propounded to a State witness, Moses Richard, as to whether he saw powder burns on the body of the deceased. The basis of the objection was that the witness was not qualified as an expert on

powder burns and, therefore, could not give testimony concerning their absence from the body of the deceased.

■ The bill is without merit. The witness, who was a mortician's helper, testified that he had seen powder burns before and could recognize them. This was not expert evidence; it was testimony relative to a fact observed by the witness.

■ The fifth bill of exception pertains to the admission of certain evidence given by the State's witness, Wesley Lee, who was queried as to whether she had seen the defendant and his wife at any time on or about the first Sunday in March of 1946. The witness, after giving an affirmative answer, was asked "Where and what were they doing?" Counsel for defendant objected on the ground that, if the purpose of the question was to show a hostile act by defendant against his wife, it was too remote to be admissible as the alleged homicide was not committed until June 21st, or some three and one-half or four months thereafter. The objection was overruled and the witness answered that she had seen the defendant beating the deceased. The judge, in his per curiam, states that his reason for overruling the objection was that, since the defendant was being tried for murder, the evidence was admissible to show motive or intent.

■■ The ruling was correct. Proof of a prior difficulty between the deceased and the accused on trial for murder is clearly

admissible to establish intent. See State v. Davis, 149 La. 1009, 90 So. 385. The question of the remoteness of the date of the difficulty to the date of the homicide does not affect the admissibility of the evidence but relates to the weight thereof.

Bill No. 6. While the defendant was on the witness stand, he was asked on cross-examination: "Did Doctor Brock, when he was Sheriff, order you to leave the State of Louisiana?" Counsel for defendant objected to the question and requested the judge to instruct the jury to disregard it. The judge complied with defendant's request, sustaining the objection on the ground that the question tended to create the impression that the defendant had trouble previously with officials of the Parish and he accordingly instructed the jury to disregard it. Counsel nevertheless reserved a bill of exception on the ground that the question was so prejudicial to defendant that the favorable ruling of the judge could not rectify the damage.

■■ We find no substance in the bill. In order for a defendant to obtain a new trial for improper remarks by the District Attorney or an attempt to prejudice him with the jury by questions which are highly objectionable, where the judge has ruled in defendant's favor and instructed the jury to disregard the remarks or the questions, it must clearly appear that the matters complained of are of such an extreme prejudicial nature that the damage caused could not be erased from the minds of the

jury and that, as a consequence, the defendant was deprived of a fair and impartial trial. Instances of an extreme prejudicial nature are rare, but they may occur when the District Attorney designedly appeals to racial prejudices or persists in asking objectionable questions after the judge has ruled the evidence inadmissible. Obviously, nothing of that sort has occurred in the instant matter. The case of State v. Frazier, 165 La. 758, 116 So. 176, relied on by the defendant, is not in point for the reason, among others, that, there, the Court, while sustaining the objections to the improper questions, refused to caution the jury to disregard them as prejudicial matter.

The seventh bill of exception was taken to the ruling of the court in permitting a state witness, Sheriff Mulina, to give evidence in rebuttal over the objection of counsel for defendant that the matters elicited were improper rebuttal testimony. When the State was presenting its evidence in chief, Sheriff Mulina testified that he had made an examination of the room where the killing occurred and that certain articles were found therein. The defendant thereafter produced evidence of another witness, who stated that he had found shotgun wadding and some clothing in the room which had not been included by the Sheriff in his testimony. The purpose of placing the Sheriff on the stand for rebuttal was to contradict the statement of the defense witness relative to the articles found by that witness. We do not find it necessary to consider whether the evidence of the Sheriff was proper rebuttal—for, assuming that it was not, the error in admitting it was unquestionably harmless. See Article 557, Code of Criminal Procedure.

Bills of exception Nos. 8 and 9 may be considered together. They are addressed to the alleged prejudicial remarks of the District Attorney in his closing argument to the jury. The District Attorney stated, "No one has ever heard of a negro woman committing suicide". Counsel for defendant objected to the remark because there was no testimony to support it and because it was allegedly made for the purpose of directing to the attention of the jury that a negro was being prosecuted. The judge instructed the jury to disregard the remark for the reason that there was no testimony in the record to justify it. He states in his per curiam that he did not consider the remark prejudicial but that he nevertheless instructed the jury to disregard it as there was no evidence to support it. Despite the favorable action by the Court, counsel urges that the remark interfered with the right of the accused to obtain a fair trial as it was an attempt on the part of the prosecution to incite racial prejudice.

We do not see how the argument of the District Attorney concerning nonsuicidal tendencies of negro women could possibly create racial prejudice in the minds of the jury. Since the judge ruled in de-

fendant's favor, he has no cause for complaint as the remark made by the District Attorney, if improper, was not such as was calculated to deprive defendant of a fair trial. See discussion of this point under bill of exception No. 6 and Marr's Criminal Jurisprudence, 2d Ed., Section 668, p. 1024 et seq.

The District Attorney, during the course of his argument, stated, "The deceased is a black woman and you gentlemen can see the defendant." Counsel objected to the remark on the ground that it had a tendency to kindle racial prejudice against the defendant, since he was very light in color and the testimony showed the deceased to be a very black woman. The judge sustained the objection and instructed the jury to disregard the remark because he did not think it was proper for the District Attorney to refer to the color of either the defendant or the deceased.

We experience difficulty in discerning the basis of defendant's complaint. The judge ruled in his favor. Moreover, we are at a loss to see how the alleged objectionable remark created racial prejudice in the minds of the jury against the defendant who was, according to the evidence, nearer white than colored.

Bill of Exception No. 10 was taken to the refusal of the judge to grant two special charges requested by the defendant relative to the rule of circumstantial evidence. The judge, in his per curiam, states that he refused the charges for the reason that they were covered in his general charge. Inasmuch as the defendant did not have the general charge included in the record, we are bound by the Judge's statement in his per curiam that the requested special charges are covered by the general charge.

Bill of Exception No. 11 was taken to the judge's refusal of a motion for a new trial. The application for the new trial is merely a repetition of the objections made during the course of the trial, which have already been considered.

The conviction and sentence are affirmed.