202 So.2d 274

**STATE of Louisiana**

v.

**Robert L. BROWN and William J. Hadrick.**

No. 48487.

· June 30, 1967.

Rehearings Denied Oct. 4, 1967.

James B. O'Neill, Philip Schoen Brooks, New Orleans, for appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendants, Robert L. Brown and William J. Hadrick, having been charged by information with the willful and unlawful possession and control of "a narcotic drug, to wit: Heroin," in violation of R. S. 40:962,[1] prosecute this appeal from their conviction and sentence thereunder to serve ten years each at hard labor in the state penitentiary.

For the reversal of their convictions and sentences, the defendants rely on several Bills of Exceptions reserved during the course of their trial which were timely perfected.[2] In order that the issues thus presented may be properly understood and disposed of we shall, first, give a résumé of the undisputed facts in so far as they are pertinent.

On the afternoon of May 26, 1966, Officers Favalora, Lampard, and Depaquier

1. R.S. 40:962 provides: "A. It is unlawful for any person to manufacture, possess, have under his control, sell, give, deliver, transport, prescribe, administer, dispense, or compound any narcotic drug, except as provided in this Sub-part, or to be or become an addict as defined in R.S. 40:961. * * *

"C. It is unlawful (1) to transport, carry, or convey any narcotic drugs, * * * in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any narcotic drugs, * * * in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any narcotic drugs * * *."

2. The first bill, taken when the motion to quash was overruled, has apparently been abandoned.

of the Narcotics Squad of the New Orleans Police Department, acting on information received from school children that their bus driver, William Richardson, made numerous stops handing pills to people, arrested him and found that he was a "terrific addict," having "track marks" (i. e., scarring at the point of repeated injections of narcotics) all over his arms. The officers, possessed of the further information furnished by the children that the driver made stops at his residence at 3017½ Cherry Street in New Orleans, Louisiana, secured a warrant for the search of this residence and, together with Richardson, rushed to his home to execute it before any evidence that might be there could be disposed of by others.

As they approached the residence, dressed in plainclothes and riding in an unmarked car with Officer Favalora at the wheel, they observed a Chevrolet parked in front of the house with the defendant Hadrick at the wheel and defendant Brown, carrying a brown paper bag, about to enter it. Both defendants were well known to these officers to be narcotic addicts and Brown, obviously recognizing the occupants in the approaching unmarked vehicle as members of the narcotics squad, hurriedly jumped into the car, with it suddenly speeding away. Believing a crime had been committed, the officers followed in close pursuit, sounding their siren with the view of having them stop. Instead, the defendants, in an

evasive action, made a sharp turn on Fig Street, about half a block from the Richardson residence on Cherry; whereupon Officer Lampard, just as the turn was made, fired three shots into the air, causing the defendants, at the third shot, to stop so suddenly the police car slightly bumped the Chevrolet, and one of the defendants went to the floor. In the meanwhile Brown was seen placing his hand to his mouth in an attempt to swallow something—the usual way in which addicts endeavor to dispose of evidence when faced with arrest.

The officers hurried to the stopped car. Hadrick did not resist, but Brown, still chewing and attempting to swallow something, had to be forcefully removed, wrestling with the officers after he was removed. When subdued, Officer Favalora noticed a white capsule on the seat where Brown had been sitting, which capsule was the same as that used in the narcotic trade. The defendants were immediately placed under arrest and taken back to the Richardson home, where a search was conducted pursuant to the warrant previously obtained. The arms of both defendants showed "track marks," evidencing the fact they were narcotic users, and, upon being questioned by Officer Favalora, admitted they had had a "fix" that morning. Although no narcotics were found in the house, a brown bag containing paraphernalia used by addicts in administering a "fix"

was discovered under the front seat when the Chevrolet was searched by Officer Lampard and Officer Soule, the latter having been summoned in the meanwhile to assist.

The first bill presented for our consideration was reserved when the trial judge, although maintaining defense motion to suppress as to the paraphernalia, overruled it as to the capsule, and another bill was taken when the capsule was actually introduced in evidence, both being predicated upon the contention the capsule was obtained without a search warrant having been first secured, in violation of the rights guaranteed them to be secure in their person and effects under the Fourth Amendment to the Constitution of the United States [3] and Section 7 of Article I of the Constitution of Louisiana.[4]

■ Significantly, these constitutional provisions do not guarantee that persons will be secure against any and all searches and seizures, only those that are unreasonable; consequently, the fact that defendants were arrested in the instant case without a warrant does not necessarily mean the arrest was illegal and that the capsule and bag discovered in the car were thus illegally obtained, making such evidence inadmissible at their trial as stemming from an unreasonable search and seizure.

Strictly within the scope of these guarantees, the law of this state, codified by the Louisiana Legislature of 1928 with its enactment of Act No. 56 (Code of Criminal Procedure), and subsequently incorporated into the Revised Statutes of 1950 as R.S. 15:1–1039,[5] provides that "Any peace officer may, without a warrant, arrest a person * * * when he has *reasonable cause* to believe that a felony has been committed and *reasonable cause* to believe that such person has committed it."  R.S. 15:60. " * * * the officer making the arrest shall inform the person arrested of his authority and the cause of the arrest" (R.S. 15:70), and "take from the person arrested, all offensive weapons or incriminating articles which he may have about his person

3. "The right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures*, shall not be violated, and no Warrants shall issue, but upon *probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." (The emphasis has been supplied.)

4. "The right of the people to be secure in their persons, houses, papers and effects *against unreasonable searches and seizures*, shall not be violated, and no such search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." (The emphasis has been supplied.)

5. The new code, adopted by Act No. 310 of 1966, has no application in the instant case, as its provisions only became effective January 1, 1967, and the incidents giving rise to the charge, conviction, and sentence in the instant case occurred prior thereto.

\* \* \*." R.S. 15:68. (The emphasis has been supplied.)

"Reasonable belief—or 'probable cause,' as it is termed under the federal standard—to make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed." State v. Johnson, 249 La. 950, 192 So.2d 135. See, also, State v. Green, 244 La. 80, 150 So.2d 571; State v. Aias, 243 La. 945, 149 So.2d 400; State v. Calascione, 243 La. 993, 149 So.2d 417; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

■ And under the jurisprudence universally prevailing in both the state and federal courts, a search may be made of the place where a legal arrest occurs for the purpose of seizing the things there found that are connected with the crime as its fruits, as well as other proof of guilt within the control of the accused. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Angello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; and State v. Calascione, 243 La. 993, 149 So.2d 417.

■ Inasmuch as the officers in the instant case arrested the defendants without a warrant, the question posed for our determination under the first two bills we are considering is whether they were authorized under this law to make the arrest and search the defendants and their automobile. Our answer to this must be in the affirmative.

■ The facts of the case clearly demonstrate the officers had reasonable cause to believe a felony had been committed and that the defendants had committed it. Officer Favalora had been informed by the bus driver, who was then under arrest and in official custody for narcotics violation, that Brown was one of the driver's associates. Inasmuch as Brown was well known to the officers as a narcotics user, it naturally follows that police officers with the experience possessed by Officer Favalora and his associates in dealing with the narcotic traffic would have just and probable cause to pursue the Chevrolet and make the ensuing arrests when they found it parked in front of the very house they had secured a warrant to search for narcotics, and occupied by two well known addicts who immediately departed the scene in haste. This is all the more true in view of the fact they saw Brown place something in his mouth and attempt to chew and swallow it

With respect to the evidence seized from the Chevrolet, defendants advance the fur-

ther contention their cause was seriously prejudiced by rulings of the trial judge in two instances relating to the same, first, when the trial judge denied their motion for a mistrial at the time the state's attorney remarked during his opening statement he intended to introduce such evidence during the trial, and, second, when the judge permitted, over defense objection, the envelope containing this evidence to be opened for the purpose of extracting the heroin capsule, which was also contained therein, their argument being this ruling exposed the paraphernalia to jury view although it had previously been ordered suppressed by the court. Proper bills were reserved to these rulings.

■■ While it appears the state failed to perfect a bill and seek appellate review of the judge's ruling suppressing the narcotic paraphernalia contained in the bag taken from the Chevrolet, we think the judge erred in this respect, for the search was incidental to the defendants' lawful arrest. However, conceding without deciding that this evidence was inadmissible because ordered suppressed by the judge, such ruling did not result in prejudice to the defendants. The trial judge properly instructed the jury the remark made by the state's attorney in his opening statement was not to be considered as evidence and that if and when such evidence was offered in evidence he would then rule on its admissibility and they would "have to follow the law as given by the court." See, State v. Smith, 153 La. 251, 95 So. 707; State v. Moore, 212 La. 943, 33 So.2d 691; State v. Alleman, 212 La. 821, 51 So.2d 83; and Article 557 of the Code of Criminal Procedure, R.S. 15:557. We find, further, that in his charge the trial judge properly advised the jury the state's opening statement "is not part of the evidence and does not prove anything at all in the case. You are to consider only the evidence in the case and the testimony of sworn witnesses who have appeared before you on the witness stand."

■ The second point made in this respect is equally without merit. The record reflects that both the paraphernalia and the heroin capsule were enclosed in a manila envelope that was presented to the chemist who testified with respect to his analysis of the contents of the capsule. It was, therefore, necessary for him to open the envelope to secure the capsule, although this resulted in exposing the other evidence therein. According to the trial judge's per curiam these exhibits were never offered in evidence, and he doubted the jury had an opportunity to notice the paraphernalia. In all probability, the jury would not have noticed the contents of the manila envelope had not defense counsel, by this objection, called it to their attention. Certainly the judge's admonition to the jury and his charge at the trial's conclusion pre-

cluded any prejudice to the cause of the defendants.

Defendants also complain of the judge's ruling which allowed the police officers to testify with respect to statements made by the defendants to the effect they were "narcotic addicts" and had already had a "fix" that morning. It is asserted that at the time these statements were made the defendants had not been apprised of their constitutional right to remain silent, that anything they might say could be used against them in court, and that they had a right to consult with an attorney.

■ The statements made by the defendants to the officers following the arrest were not in fact confessions, but, rather, inculpatory statements that were properly admissible to show guilty knowledge, providing that in eliciting this evidence the constitutional rights of the accused were not violated. See, State v. Aspara, 113 La. 940, 37 So. 883; State v. Roshto, 222 La. 185, 62 So.2d 268; State v. Dallao, 187 La. 392, 175 So. 4, appeal dismissed 58 S.Ct. 48, 302 U.S. 635, 82 L.Ed. 495, rehearing denied 302 U.S. 776, 58 S.Ct. 137, 82 L.Ed. 601; and Article 449 of the Code of Criminal Procedure, now R.S. 15:449.

■ It appears that after the arrest, when the defendants spontaneously began to talk to the officers they were promptly interrupted by one of the officers who advised them they did not have to make any statement, that they had a right to remain silent, that any statements made by them could be used against them, and that they had a right to counsel. At this point Brown commented; "I know all that." The officers also testified the defendants spoke freely without any threat or inducements. and neither requested an attorney nor sought to be relieved from the interrogation. The arms of both defendants (the left arm of Hadrick's and both of Brown's) disclosed unmistakable "track marks."

The record further reveals that neither defendant, significantly, attempted to corroborate the other with respect to this argument, nor did either call Willie Richardson as their witness although he was present during the entire incident. Hadrick, taking the stand on the predicate, denied. the officers threatened him or beat him, and stated they had not informed him of his right to an attorney or to remain silent. Brown did not deny making the statement attributed to him after he was advised by the officers of his rights, i. e., "I know all that," but, instead, testified the officers had beaten him severely and did not tell him of his right to counsel and to remain silent. All three officers, on the other hand, testified positively that the statements were made by the defendants in their presence and at no time were they threatened, mistreated, or offered any inducement for making these statements.

■ After a review of the record we find the oral and written contention of defense counsel that Brown repeatedly requested an attorney is not supported by a scintilla of evidence. The only mention Brown made of an attorney occurred as he was being removed from the Chevrolet at the time it was stopped, when he yelled he had done nothing to justify his removal from the car and was going to tell his lawyer, implying not only that he was being illegally arrested, but also that he was fully aware of his rights under the constitution.

We therefore conclude the trial judge was correct in ruling the statements made to the officers objected to under this complaint were made freely and voluntarily after defendants had been amply apprised of their constitutional rights. As admissions against interest, and also for the purpose of showing guilty knowledge, they were admissible.

■ The last bill relied on was reserved on behalf of Brown at the time the judge allowed Officer Favalora to testify as an expert. His ruling in this respect is amply supported by the record. Officer Favalora had, at the time, been serving on the Narcotics Squad of the New Orleans

Police Department for 12 years and, through the experience and knowledge acquired during these years as to the use of narcotics and the effect it has on an individual, was eminently qualified to testify as an expert in this field. See, State v. Di Vincenti, 232 La. 13, 93 So.2d 676; State v. Burkhalter, 211 La. 342, 30 So.2d 112; State v. Dowdy, 217 La. 773, 47 So.2d 496.

■ This leaves for our consideration the rulings of the trial judge denying defense motions for a new trial and in arrest of judgment. The former alleges, in addition to the usual assertion that the verdict is contrary to the law and the evidence, the errors incorporated in the various bills just above disposed of adversely to their contention, and therefore, presents nothing further for us to review as we lack appellate jurisdiction on questions of fact. The latter states merely that "manifest error exists which is patent on the face of the record," although in what respect this is so is not stated and our examination thereof fails to disclose any manifest error.

For the reasons assigned, the convictions and sentences of the defendants are affirmed.