DOUCET, Judge.
On August 31, 1986, appellant was charged by bill of information with simple burglary, a violation of La.R.S. 14:62. Appellant was found guilty as charged. Subsequently, a bill of information asserting that the appellant was a second offender under the Habitual Offender Law, La.R.S. 15:529.1, was filed at the sentencing hearing to which the appellant pled guilty. Appellant was sentenced as a second offender to twelve years in the custody of the Department of Corrections. His conviction was appealed on two assignments of error.
FACTS
On August 81, 1986, Cathy Verrett, an employee of Sonitrol Security System of Calcasieu, Inc., was aurally monitoring burglar alarms installed by that company which report sounds from microphones within the buildings to the central station. On this particular day at approximately 1:14 p.m., Ms. Verrett heard a banging noise, followed by a hissing sound at Lake Charles Pipe and Supply at 1228 Broad Street. Two tape recorders were activated, one to record the sounds reported by the alarm, and a separate recorder to monitor the reports coming in over the police scanner. Also, a door light indicated that the door to one of the buildings was opened three times after the hissing noise stopped. The police were notified when the system indicated a door was opened. The police arrived within five minutes of the door opening and within one minute of the call over the police radio.
Upon arrival, police Officer Norris Be-noit heard a sound like a steel door opening on concrete and observed a black male running, then jumping from the top of a fence onto the top of a building. Officer Clifford Johnson, also responding to the call, saw a black male wearing cut off jeans, flip flops, cotton work gloves, and carrying a shiny object in his hand. Officer Johnson also testified that he observed defendant run and jump onto the roof of the building. Officers Benoit, Johnson, and William Summers combined to cut off the escape of this black male. Before defendant jumped off of the roof into their custody, these three officers witnessed defendant put down the gloves and other objects. The officers also witnessed defendant kicking off his flip flop sandals. Officer Summers recovered the work gloves, sandals, and two crescent wrenches from the roof where the suspect had been. It was testified to that the crescent wrenches found on the roof appeared to be from inside the shop, but the possibility of the wrenches being left outside from the previous day was not ruled out.
Before jumping down to the officers from the roof, the suspect expressed fear of being shot. Defendant later voluntarily stated that he was on the premises looking for lawn mower tires and that he had not entered the building. An old lawn mower was on the scene which had wheels on it. A truck near the door allegedly entered by the defendant had an acetylene torch which had been strung out from the truck to the door since the close of business on Friday. The hasp on the door from which defendant allegedly entered had apparently been burned off with an acetylene torch. The padlock on the door had also been burned off and part of it was found the next day approximately 50 to 80 yards from the door. The door that was opened and allegedly entered into by defendant was labelled with a “No Admittance” sign.
At trial, Keith Cayton, president and part owner of Sonitrol Security Systems of Cal-casieu, Inc., was qualified as an expert in sound identification. Cayton played the audio tape of the noises picked up by the microphones during the break-in. He opined that the sounds were footsteps on a hard surface, such as the floor inside the building as opposed to outside on dirt. Cayton also opined that the popping noise heard in the tape might indicate flip flop sandals being worn. Cayton noted movement, metal on metal noises, and the sound of metal being moved. Cayton testified that some of the footsteps and metal noises came from inside the building. He identified different sounds including door sliding open, drawers opening, and objects sliding across the floor. Cayton also identified footsteps quickening to a trot, police *52 voices, and impact noises. Cayton also testified that in his opinion, the door opened twice, confirming the testimony of Ms. Ver-rett, the Sonitrol employee on duty at the time of the break-in.
ASSIGNMENT OF ERROR NO. 1:
Appellant contends that it was error for the trial court to accept Keith Cayton as an expert in sound identification. Appellant submits that the field of sound identification is ill-defined and in-exact, with no books, treatises, or scholarly publications dealing with the field. The field of sound identification must be shown to be capable of academic, scholarly or scientific pursuit and a recognized field of expertise according to appellant. Keith Cayton is argued to be unqualified to give expert testimony because the foundation laid by the state showed insufficient special training and experience in the field of sound identification.
Appellant points to the case of State v. Free, 493 So.2d 781 (La.App. 2nd Cir.1986) as illustrative of the fact that a foundation should be laid for expert testimony in such a field. Free, supra, dealt with an expert in voice identification. The expert in Free, supra, had a B.S. in Sociology and a Master’s Degree in Audiology and Speech Services. Additionally, the expert had practical experience and was responsible for organizing an international group of specialists in the field. The expert in that case testified that he had examined 6,000 voices and 370,000 individual sounds and was certified by the organization of which he had been president.
However, the present case is distinguishable by the expertise required for the opinions given and the unique nature of the field. Mr. Cayton did not testify to any specifics requiring expertise beyond that shown in the foundation laid by the state. Mr. Cayton attended classes on the subject put on by the national Sonitrol Company. These claims are important in combination with his years of experience.
Witnesses testifying about opinions must establish to the satisfaction of the court that they are sufficiently knowledgeable on the subject they will testify about. La.R.S. 15:466; State v. Trosclair, 443 So.2d 1098 (La.1983). The competence of an expert is a question of fact within the sound discretion of the trial judge and his rulings on the qualification of expert witnesses will not be overturned absent manifest error. State v. Davis, 445 So.2d 163 (La.App. 2nd Cir.1984); State v. Coleman, 406 So.2d 563 (La.1981). Expert testimony is admitted because the expert is uniquely skilled at drawing inferences thereby helping the jury more than with the facts by themselves without his conclusions. State v. Myles, 432 So.2d 1018 (La.App. 1st Cir.1983); State v. Short, 368 So.2d 1078 (La.1979). The jury retains the right to accept or reject the expert’s conclusions and the jury was so instructed in this case. State v. Pruitt, 482 So.2d 820 (La.App. 4th Cir.1986) writs denied 488 So.2d 1018 (La.1986); State v. Myles, supra; State v. Short, supra.
Appellant asks us to find that manifest error was presented in the acceptance of Mr. Cayton as an expert in sound identification. As previously stated, he points us to State v. Free, supra, as instructive of the credentials that should be required. However, in State v. Smith, 448 So.2d 778 (La.App. 2nd Cir.1984), a witness was allowed to qualify as an expert in the field of fire investigation despite never having received any type of college or advanced degree and never having been qualified previously in the field as an expert. The expert in Smith, supra, had worked as a fire marshal and attended several arson seminars and classes at the LSU Fireman Training Academy. The court in Smith, supra, stated:
“There is no rule of law, statutory or jurisprudential, which requires that different standards be placed on those witnesses who seek to be qualified as an expert in a field for the first time. Rather, the same standard of competency applies to all and a trial judge is only required to satisfy himself that the witness’ competency has been established prior to qualifying him as an expert....”
[Citing State v. Chatman, 337 So.2d 1106 (La.1976) ]; 448 So.2d at 780-781. Also, in *53 addressing the expert’s qualifications, the Smith court found:
“Likewise, defendant’s contention that this witness’ lack of a college or an advanced degree should bar his qualification is without merit. The Louisiana expert testimony statute follows the commentators in recognizing that not only special training but also experience can qualify an individual as an expert on certain matters. State v. Short, 368 So.2d 1078 (La.1979).” 448 So.2d at 781. (emphasis in original).
While expertise in a field is relative to the scientific progress in the field, early cases employing the rules on qualification of experts is enlightening. In State v. Normandole, 174 La. 835, 141 So. 851 (1932), a policeman of eight years with only practical experience and no formal training was allowed to give his opinion relating to marijuana. The court stated:
“The court did not err in permitting the officer to express his opinion that the cigarette was made of marijuana. He testified that he had been a police officer for many years, and had “come in contact” with marijuana many times, and knew the leaves of the plant when he saw them. He was therefore what may be termed a skilled witness whose knowledge had been gained by practical experience and observation in his line of work. It is not necessary for a person to have scientific, professional, or technical training in order to enable him to draw inference or conclusions. He may gain such special knowledge from practical experience and observation in his line of work, as to qualify him to express an opinion concerning the fact at issue before the court.”
“The average man, or ordinary observer, is qualified to express his opinion or his conclusion relating to a precise matter or fact, if his experience and opportunity for observation have been such as to enable him to reach the conclusion which he proposes to state. Such a person is not an “expert”, as that term is used in a technical sense. Nevertheless, he may express an opinion based upon facts which he has learned from everyday experience and observation.”
“Women, for instance, know when they examine a garment whether it is made of cotton, wool, or silk cloth, and a lumberman knows a cypress plank when he sees it. Such knowledge is gained, not from scientific, technical skill, but from ordinary observation.”
“The skill required of a witness to qualify him to express an opinion does not necessarily need to be of a scientific nature. Skill and knowledge gained from practical experience suffices.” (emphasis added).
141 So. at 852. Normandole, supra, was recently cited in Baker v. Thibodaux, 470 So.2d 245 (La.App. 4th Cir.1985) as authority for the proposition that scientific or professional training is not a prerequisite for a finding of expertise in a field.
Again, in State v. Burkhalter, 211 La. 342, 30 So.2d 112 (1947), a policeman with no training and only practical experience from use of firearms and testing he conducted on his own was allowed to give an opinion on the distance from which a firearm would have made a powder burn. In Burkhalter, the court stated:
“Counsel for defendant argues that it was error to permit Magee to give his opinion in view of his admission that he neither had expert training in the science of ballistics nor had he ever taken a special course on powder burns
“The point is not tenable. It is not necessary for one to take a special course in a particular subject in order to become expert therein unless the subject be of such a scientific nature that skill or adequate knowledge of it cannot be attained by practical experience and observation. See State v. Normándole, 174 La. 835, 141 So. 851. Thus, a police officer, with twenty-two years of experience in handling firearms who has made tests respecting distance at which powder burns will be caused, is qualified to give expert evidence based on the knowledge acquired by practical experience.”
30 So.2d at 114. See also State v. Brown, 250 La. 1125, 202 So.2d 274 (1967).
*54 Looking at the nature of the sounds identified, the fact that the jury could form opinions on most of the sounds from ordinary human experience, and that the jury was free to disregard the opinions of Mr. Cayton, abuse of the trial court’s wide discretion in qualifying witnesses as experts cannot be found.
ASSIGNMENT OF ERROR NO. 2:
Appellant urges in this assignment of error that the evidence is insufficient to support the verdict. The standard for appellate review in evaluating the sufficiency of evidence is whether a rational trier of fact, viewing the evidence of the case in a light most favorable to the prosecution, could have found that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Camp, 446 So.2d 1207 (La.1984); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Intent may be shown by circumstantial evidence. La.R.S. 15:445. The circumstantial evidence must show that if all facts are assumed proved that the evidence tends to prove, the evidence must exclude every reasonable hypothesis of innocence in order to prove guilt. La.R.S. 15:438. State v. Chism, 436 So.2d 464 (La.1983). State v. Nealy, 450 So.2d 634 (La.1984).
The elements of the crime of simple burglary which must be proved are:
1. entry of a structure
2. the entry being unauthorized, and
3. the specific intent to commit a theft or felony therein. La.R.S. 14:62.
The second element was shown by the testimony of Belin Landry, Jr., co-owner and assistant manager of Lake Charles Pipe and Supply. Mr. Landry testified:
Q. “Now, did you, on that particular weekend, give anyone authorization to be in the shop, the building that was entered on that date?
A. Absolutely not.
Q. Did you give anyone any authorization to be at Lake Charles Pipe and Supply on that weekend, sir?
A. The only people that would have authorization to be at Lake Charles Pipe would be those that have Sonitrol security cards that might have to make an after-hour delivery. I mean, this is understood that they can enter into our new merchandise warehouse to get merchandise to deliver to the plants if an emergency comes up.”
Obviously, the jury had sufficient evidence to find that the defendant’s presence in the shop area was unauthorized.
With respect to the third element, the appellant admitted to the arresting officer that he was there to procure lawnmower tires, but these were not within the building. However, the first element, if proved, may supply circumstantial evidence of the intent to commit a theft from inside the building. Recently in State v. Foster, 510 So.2d 717 (La.App. 1st Cir.1987) that court found in a prosecution for simple burglary at a pharmacy that:
“The intent to commit the theft of something of value, however, can be inferred from defendant’s unlawful entry of the building at a time when the pharmacy was not open for business. Thus the evidence conclusively establishes defendant is guilty of simple burglary.”
510 So.2d at 721. Additionally, Mr. Cayton testified that objects were moved inside the building and that drawers were opened. Defendant had in his possession cotton work gloves and two crescent wrenches which, while they were not positively identified as coming from inside the building or even from the yard, could be factors influencing the jury’s decision. Thus, this element is supported by sufficient evidence.
With respect to the first element, entry of a structure, all three police officers arriving at the scene admitted never seeing appellant inside the building or leaving it. Appellant attacks the lack of direct evidence of entry; however, direct evidence of the unauthorized entry is not required. State v. McClure, 258 La. 999, 249 So.2d 109 (1971). The police officers arrived and found the door open with the hasp cut. Cathy Verrett of Sonitrol indicated that the light on the alarm panel indicating a door opening showed the door opened three times. Moreover, Keith Cayton of Sonitrol, *55 qualified as an expert in the field of sound identification as discussed in assignment of error number one, testified that the tape indicated two door openings, then footsteps and sounds of movement coming from inside the building. It is also important to note that no other persons were seen in the vicinity of the crime and the police arrived on the crime scene within one minute of receiving the call and five minués from first entry.
The circumstantial evidence in this case is sufficient to exclude appellant’s claim that he did not enter the building and was only in the yard to get the lawn mower wheels from the lawn mower in the yard and ran only due to the fear of being shot. The state met its burden of providing evidence of each element of the crime which the jury found persuasive of the guilt of the appellant. Thus, we will not disturb the jury’s findings on appeal.
Accordingly, for the foregoing reasons, the conviction and sentence of defendant is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.